In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00054-CR
______________________________


JOHN CHARLES FOX, IV, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 336th Judicial District Court
Fannin County, Texas
Trial Court No. 19963


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          John Charles Fox, IV, was convicted by a jury for aggravated sexual assault of a
child.


 The jury assessed punishment at forty years' imprisonment and a $10,000.00 fine. 
He was sentenced in accordance with the jury's verdict. Fox appeals, contending the trial
court erred in (1) failing to make an "inquiry" into the mental status of the victim during her
testimony at the penalty phase; (2) failing to grant a mistrial after the victim suffered a
"psychotic episode" during her testimony at the penalty phase; (3) in overruling his
objection to the opinion by the State's expert that the victim was telling the truth; (4) in
limiting his cross-examination of the State's witnesses regarding the victim's post-traumatic
stress disorder; and (5) in denying his motion for new trial. Fox also contends that he was
denied effective assistance of counsel at trial and that he was denied due process of law
by the State's suppression of exculpatory evidence. We affirm the judgment. 
BACKGROUND
          Although Fox does not challenge the sufficiency of the evidence, a brief recitation
of the facts, as presented by the State's evidence, is appropriate. The victim, L.C., was
eleven years old at the time of the offense and fourteen at the time of trial. She has one
brother, and their mother is Jennifer Jo Cassidy. L.C. testified that Fox was her mother's
former boyfriend and that he lived in the home with them for eight years. However, at the
time of the offense in question, Fox had been out of the home for about a month. L.C.
testified that, during the time Fox was living with them, he touched her inappropriately
many times. She further testified that, on a rainy evening in November 2000, she and her
brother were at home and their mother was at a friend's house when, around midnight, Fox
tapped on her bedroom window. L.C. let him inside the house through the window and
followed him to her mother's bedroom, where Fox sexually assaulted her on her mother's
bed. L.C. was in her menstrual period, and as a result of the assault, blood was left on the
bed and on a white T-shirt Fox was wearing. After the assault, Fox changed into a different
shirt, leaving the white T-shirt at the house. L.C. testified that, after Fox left, her mother
returned home around 1:00 a.m. L.C. told her what had happened. They contacted the
police the next day. 
FAILURE TO CONDUCT MENTAL STATUS HEARING OR GRANT MISTRIAL
          Fox's first two points of error are related and will be considered together. He
contends that, after L.C. suffered a "psychotic episode" during her testimony at the penalty
phase of the trial, the court erred in failing to conduct an inquiry into her mental
competency to testify and in failing to grant a mistrial. 
          During the punishment phase of the trial, but outside the jury's presence, the
following exchange occurred between the trial court and L.C.:
          THE COURT: Did you want to say something? . . . .
 
          [L.C.]: Actually, really the reason why I'm taking medication is that he
sent dolls after me and I have been seeing dolls for three years chasing me,
and telling me to kill people, and I almost killed my brother over it.
 
          Fox immediately moved for a mistrial, which the court denied. Fox now contends
the trial court's failure to sua sponte conduct a hearing to determine L.C.'s mental
competency was error. 
          Rule 601 of the Rules of Evidence creates a presumption that a person is
competent to testify. Tex. R. Evid. 601. The trial court has no duty to conduct a
preliminary competency examination on its own motion. McGinn v. State, 961 S.W.2d 161,
165 (Tex. Crim. App. 1998). However, Rule 601(a)(2) places the power to determine a
witness' competency in the hands of the trial court. Broussard v. State, 910 S.W.2d 952,
960 (Tex. Crim. App. 1995). A ruling by the trial court will not be disturbed on review
unless an abuse of discretion is shown. Id.; Clark v. State, 558 S.W.2d 887, 890 (Tex.
Crim. App. 1977). Rule 601 does not require, nor does it empower, a judge to force a
witness to undergo psychiatric evaluation for the purpose of a competency determination. 
Broussard, 910 S.W.2d at 960. 
          At the time of the above exchange between the trial court and L.C., she had already
testified fully and completely at the guilt/innocence phase without any indication of
confusion or being out of touch with reality. Although Fox was aware before trial that L.C.
had mental problems, at no time did he object to L.C.'s testimony on the ground she was
not mentally competent to testify. After the exchange related above, Fox objected:
Judge, that sure seems exculpatory to me. I'm not sure what the appropriate
objection is at this time, but I should have known about that.
 
          . . . .
 
About psychotic episodes, apparently, the inability to distinguish between
reality and fiction, when all the testimony in this case came from her opinion
of what happened to her, Judge, I would ask for a mistrial.

          In order to preserve any error for appellate review, a party must present a timely,
specific objection to the trial court and secure an adverse ruling. Tex. R. App. P. 33.1;
Turner v. State, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991). Fox did not preserve any
error in the trial court's failure to sua sponte conduct a hearing to determine L.C.'s mental
competency.
          Even if the alleged error had been preserved, the matter of permitting a mentally
incompetent person to testify rests largely in the court's discretion and its ruling will not be
reversed unless an abuse of discretion is shown. Holland v. State, 481 S.W.2d 410, 412
(Tex. Crim. App. 1972). In Holland, a witness testified that she had been an outpatient
because of a mental problem and that she sometimes had trouble remembering things. 
Id. at 411. Holland argued the court should have interrogated the witness to determine
whether she was a competent witness. Id. After reviewing the record, the Texas Court of
Criminal Appeals held the trial court did not abuse its discretion because the witness
testified she remembered the burglary and remembered Holland, and because the
objection to the testimony was made after the witness had testified at length. Id. at
411–12.
          Further, in reviewing a trial court's competency ruling, we consider the witness'
entire testimony given both at trial before the jury and at the competency hearing. 
Hernandez v. State, 643 S.W.2d 397, 400 (Tex. Crim. App. 1982); Castro v. State, No. 03-98-00570-CR, 1999 Tex. App. LEXIS 8592, at *17 (Tex. App.—Austin Nov. 18, 1999, pet.
ref'd) (not designated for publication). In Castro, an eyewitness testified to a murder. 
Castro, 1999 Tex. App. LEXIS 8592, at *3. The state admitted the eyewitness suffered
from some type of mental illness or other problems. Id. at *17. Before being sworn in and
in the presence of the jury, the eyewitness chattered nonsensically, claiming that the state
did a brain scan on him and that he was Elvis Presley. Id. After he was sworn in, he
claimed again to be Elvis and said he was "hotter than the FBI." Id. The Austin Court of
Appeals held the eyewitness competent to testify. Id. at *20. The court reasoned the
eyewitness possessed the "intellect to relate the transaction that he's going to be
interrogated upon." Id. at *18. The eyewitness knew the difference between the truth and
a lie, and answered the state's question coherently and with intelligence and
understanding. Id.
          Similarly, here, L.C. had already testified at the guilt/innocence stage without an
objection to her competency. L.C. answered all the questions coherently, with intelligence
and understanding. She also testified she knew the difference between telling the truth
and a lie. Thus, reviewing the record as a whole, we hold the trial court did not abuse its
discretion by failing to sua sponte conduct a hearing to determine L.C.'s mental
competency or in overruling Fox's motion for a mistrial. 
FAILURE TO EXCLUDE EXPERT TESTIMONY
          Fox asserts the trial court erred in admitting the expert testimony of Ed Wagoner
because it constitutes an improper opinion. Wagoner, a licensed professional counselor
called by the State, testified in relevant part as follows:          [State]:          . . . . Are there factors you look at when you are
interviewing a child to tell if a child is lying to you?
 
          . . . . 
 
          [Wagoner]:    Right. Recording of a videotape we try to determine if
the child understands the difference between the truth and lying, and, you
know, use some examples of truth statements and lies that the child can
identify. And from that point forward it's a matter of just getting the
information from the child and looking at it from, I guess, a professional point
of view to say does this appear to be realistic does this appear to be valid?
 
          . . . . 
 
          [Defense]:     . . . . So, Mr. Wagoner, we went through a number of
factors here that you consider. . . .
 
          [Wagoner]:    Yes.
 
          [Defense]:     And we have been through pretty much every one of
them on cross-examination, correct?
 
          [Wagoner]:    If you feel comfortable with that, I do.
 
          [Defense]:     Well, one of the things, I guess, just to be complete is,
you said the story appears to be realistic?
 
          [Wagoner]:    The videotape I viewed, my feelings about it was that
this young lady was telling the truth --
 
                     [Defense]:     Objection, Your Honor, nonresponsive.
 
                     [The Court]:  I think he was responding. Overrule. 
 
          An expert witness may not testify a witness is truthful, but an expert may testify the
child exhibits symptoms consistent with sexual abuse. Cohn v. State, 849 S.W.2d 817,
819 (Tex. Crim. App. 1993); Edwards v. State, 107 S.W.3d 107, 115 (Tex.
App.—Texarkana 2003, pet. ref'd). The witness may not "cross the line" and testify directly
as to the victim's truthfulness, as it does not concern a subject matter on which the
testimony of an expert witness could assist the trier of fact. Yount v. State, 872 S.W.2d
706, 709 (Tex. Crim. App. 1993); Edwards, 107 S.W.3d at 115. 
          To be admissible, expert testimony must "assist" the trier of fact. Tex. R. Evid. 702;
Duckett v. State, 797 S.W.2d 906, 914 (Tex. Crim. App. 1990). But, the expert testimony
must aid—not supplant—the jury's decision. Duckett, 797 S.W.2d at 914. Expert
testimony does not assist the jury if it constitutes "a direct opinion on the truthfulness" of
a child victim's allegations. Yount, 872 S.W.2d at 708. 
          In Edwards, the expert was asked about factors to determine if a child was telling
the truth. Edwards, 107 S.W.3d at 115–16. The expert, after describing the factors for
truthfulness, testified as to the factors indicating the child exhibited some indicia of
truthfulness. Id. at 116. Another expert witness likewise testified over objection as to
factors indicating to her the child exhibited some indicia of truthfulness in her interview with
the child. This Court held that the testimony regarding the factors of truthfulness observed
by the experts constituted a direct comment as to the truthfulness of the child. Id. 
Therefore, the testimony did not assist the jury and was held inadmissible. Id. 
          Edwards is distinguishable from the instant case. In Edwards, the state elicited the
testimony regarding truthfulness. Here, the State did the same thing, but Fox did not
object. In fact, it was Fox who elicited the very testimony of which he now complains. It
was Fox who, on cross-examination of Wagoner, went through each of the "factors that
[he] consider[s] in determining the truthfulness of a child." Then, in concluding the cross-examination, Fox asked Wagoner whether the story appeared to be realistic. That
question induced the response that, in Wagoner's opinion, L.C. was telling the truth. Fox
invited the response, and the trial court did not err in admitting Wagoner's testimony.
LIMITING CROSS-EXAMINATION
          Fox contends the trial court erred in limiting his cross-examination of Patti Andrews,
L.C.'s therapist, concerning L.C.'s post-traumatic stress disorder, and that such limitation
violated his right of confrontation guaranteed under the Constitutions of the United States
and the State of Texas. He further contends such limitation was harmful. See Saglimbeni
v. State, 100 S.W.3d 429, 436 (Tex. App.—San Antonio 2002, pet. ref'd). The State
contends the error was not preserved for appellate review. 
          Andrews testified in the presence of the jury that L.C. suffered from post-traumatic
stress disorder. Fox then established outside the jury's presence that Andrews was aware
L.C. had accused three other individuals of sexually abusing her and that this abuse was
part of the cause of L.C.'s disorder. Fox then objected: 
Judge, I objected [sic] to her testifying as to post traumatic stress disorder,
I object to the relevance of it, because how this is going to affect her in the
future has absolutely no bearing on whether or not [Fox] sexually assaulted
her. . . . [Andrews] clearly . . . said that post traumatic stress disorder was
caused by the accumulation of these four events. Now this jury is left with
the impression that she suffers from post traumatic stress disorder, the rest
of her life is going to be ruined because of [Fox]. 
 
          . . . . 
 
I would ask that you . . . ask the jury to disregard the testimony regarding
post traumatic stress disorder because it's clearly not relevant, especially if
I'm not allowed to develop on cross-examination . . . the fact that it's not just
my client, she's . . . alleged to have been sexually assaulted by her father.
 
The trial court overruled his objection. Fox now complains this limitation on his right to
cross-examination permitted a false picture to be presented to the jury that violated his
right of confrontation guaranteed under the Constitutions of the United States and Texas.
          We have held, and the Rules of Evidence make clear, that to preserve error in the
exclusion of evidence, the proponent is required to make an offer of proof and obtain a
ruling. Tex. R. Evid. 103(a)(2); Williams v. State, 937 S.W.2d 479, 489 (Tex. Crim. App.
1996); Butler v. State, No. 06-03-00192-CR, 2004 Tex. App. LEXIS 6800, at *11 (Tex.
App.—Texarkana July 28, 2004, pet. ref'd) (not designated for publication). Fox did both,
but his objection was not specific enough to put the trial court on notice that Fox was
making a Confrontation Clause argument; hence, the error is not preserved. 
          In Reyna v. State, No. PD-0255-04, 2005 Tex. Crim. App. LEXIS 978, at *17 (Tex.
Crim. App. June 29, 2005), Reyna was charged with indecency with a child. Id. at *1. After
the victim had testified on direct examination by the state, Reyna sought to introduce
evidence of the victim's prior false allegation of sexual assault and her recantation of that
allegation. Id. at *1–2. Reyna sought to introduce the evidence, not to prove the truth of
the matter asserted, but rather to demonstrate she previously made a sexual assault
allegation that she recanted. Id. at *3. The Texas Court of Criminal Appeals held that
Reyna's 
arguments about hearsay did not put the trial judge on notice that he was
making a Confrontation Clause argument. Because Reyna "did not clearly
articulate" that the Confrontation Clause demanded admission of the
evidence, the trial judge "never had the opportunity to rule upon" this
rationale. As the losing party, Reyna must "suffer on appeal the
consequences of his insufficiently specific offer." Reyna did not do
"everything necessary to bring to the judge's attention the evidence rule or
statute in question and its precise and proper application to the evidence in
question."
 
Id. at *17 (footnotes omitted). Hence, the Texas Court of Criminal Appeals affirmed the
trial court's judgment to exclude the victim's prior false allegation of sexual assault. 
          Similarly, this case involves a proffer of evidence, where Fox did not argue that the
Confrontation Clause demanded admission of the evidence. Fox argued instead that,
because the trial court excluded his proffered evidence that L.C. had accused three other
individuals of sexually abusing her, the evidence of post-traumatic stress disorder had no
relevance: "I object to the relevance of it"; "I would ask that you . . . ask the jury to
disregard the testimony regarding post traumatic stress disorder because it's clearly not
relevant." The arguments about relevance did not put the trial court on notice that Fox was
making a Confrontation Clause argument. Because Fox did not clearly articulate that the
Confrontation Clause demanded admission of the evidence, the trial court never had the
opportunity to rule. We agree that no error is preserved. 
DENYING THE MOTION FOR NEW TRIAL
          Article 40.001 of the Code of Criminal Procedure states that a new trial shall be
granted to an accused where material evidence favorable to the accused has been
discovered since trial. Tex. Code Crim. Proc. Ann. art. 40.001 (Vernon Supp.
2004–2005). Not only does the decision to grant or deny such a motion fall within the
sound discretion of the trial court, subject to reversal only on a finding of an abuse of that
discretion, but these motions are generally disfavored by the courts and viewed with great
caution. Lewis v. State, 126 S.W.3d 572, 579 (Tex. App.—Texarkana 2004, pet. ref'd). 
A trial court does not abuse its discretion in denying a motion for new trial unless the record
demonstrates that (1) the newly discovered evidence was unknown at the time of the trial;
(2) the failure to discover the new evidence was not due to a lack of diligence; (3) the new
evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching;
and (4) the new evidence is probably true and will probably bring about a different result
in a new trial. Id.
          Fox contends that, to the extent this Court excuses the alleged deficiency of trial
counsel's investigation, then the additional evidence concerning L.C.'s psychiatric problems
and accusations of sexual abuse by others presented at the hearing on the motion for new
trial qualifies as newly discovered evidence and warrants a new trial. We disagree. 
          The facts concerning L.C.'s psychiatric problems and her accusations of sexual
abuse by others were known by trial counsel before trial. Further, the evidence presented
at the hearing on the motion for new trial concerning L.C.'s psychiatric problems is
cumulative of the testimony of her brother, mother, and Andrews on this subject. Also, Fox
was permitted to question L.C. at the punishment phase concerning her accusations of
sexual abuse by other individuals. This evidence was not newly discovered. Further, Fox
has not articulated how the "new evidence" would bring about a different result in a new
trial. The trial court did not abuse its discretion by overruling the motion for new trial.
INEFFECTIVE ASSISTANCE OF COUNSEL
          Fox contends he received ineffective assistance of counsel at trial because his
counsel a) elicited the opinion of the State's expert that L.C. was telling the truth; b) failed
to make the appropriate motion or objection to preserve the error when L.C. revealed that
dolls spoke to her; c) failed to adequately investigate Fox's case; d) failed to hire a defense
expert; e) elicited unfavorable hearsay testimony; f) failed to properly present opinion
testimony concerning L.C.'s truthfulness; g) failed to present evidence of L.C.'s psychiatric
history; h) failed to move for a mistrial when the State referred to the defense as "evil";
i) failed to object to the State's injection of harmful facts during the final argument; and
j) failed to object to the expert's testimony that L.C. had been sexually abused.    
          Ineffective assistance of counsel claims are evaluated under the two-part test
formulated by the Supreme Court in Strickland, requiring a showing of both deficient
performance and prejudice. Strickland v. Washington, 466 U.S. 668 (1984); Thompson
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The first prong of the test requires a
showing that counsel's representation fell below an objective standard of reasonableness. 
Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). The second prong requires
a showing that the deficient performance prejudiced the defense to the degree that there
is a reasonable probability that, but for the attorney's deficiency, the result of the trial would
have been different. Id. A Strickland claim must be "firmly founded in the record" and "the
record must affirmatively demonstrate" the meritorious nature of the claim. Goodspeed v.
State, No. PD-1882-03, 2005 Tex. Crim. App. LEXIS 520, at *4 (Tex. Crim. App. Apr. 6,
2005); Thompson, 9 S.W.3d at 813. Direct appeal is usually an inadequate vehicle for
raising such a claim because the record is generally undeveloped. Goodspeed, 2005 Tex.
Crim. App. LEXIS 520, at *4; Thompson, 9 S.W.3d at 813–14. The "trial counsel should
ordinarily be afforded an opportunity to explain his actions before being denounced


 as
ineffective." Goodspeed, 2005 Tex. Crim. App. LEXIS 520, at *5; Rylander v. State, 101
S.W.3d 107, 111 (Tex. Crim. App. 2003). Absent such an opportunity, an appellate court
should not find deficient performance unless the challenged conduct was "so outrageous
that no competent attorney would have engaged in it." Goodspeed, 2005 Tex. Crim. App.
LEXIS 520, at *5; Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). 
          a. Improperly Eliciting Testimony from the State's Expert Witness
          Fox contends his counsel improperly asked the State's expert whether L.C.'s
account of the alleged offense appeared to be realistic, which induced the response that
L.C. was "telling the truth." At the hearing on Fox's motion for new trial, his trial counsel
explained, "I think the appearance of the story is different from whether or not he [the
expert] believes that you are telling the truth. I mean, I could tell a story and appear to be
realistic and be lying about it." Therefore, trial counsel testified the question was
reasonable, but elicited a nonresponsive answer. Counsel objected to the answer as being
nonresponsive. The trial court disagreed that the answer was nonresponsive, but that
does not negate the fact counsel had a reasoned basis for the question. The way the
question was phrased induced a response trial counsel did not intend. Such was a mistake
on his part, but that mistake does not constitute ineffective assistance under the standards
outlined above. 
          b. Mistrial Objection
          Fox contends that, after L.C. revealed that dolls spoke to her, his trial counsel
should have made a different motion, requested other relief, or objected on any grounds
other than requesting a mistrial. Trial counsel testified at the hearing on the motion for new
trial:
I should have flushed that out better. In hindsight, that should have been
gone into more. I did not -- it didn't impress me perhaps as much as it
should have. She was testifying during the sentencing phase and apparently
didn't even understand what she was saying was crazy. 
 
          Trial counsel further testified he had been practicing criminal defense exclusively
for five years and had tried approximately 120 jury trials. The motion for a mistrial in the
instant case was based on this experience, and such motion was appropriate. Fox's
appellate counsel has not articulated additional motions or objections that should have
been made. Fox did not receive ineffective assistance of counsel for failure to do more
than move for a mistrial.
          c. Failure to Investigate     
          Fox contends his trial counsel failed to investigate: 1) the whereabouts of L.C.'s
mother on the night of the offense; 2) Fox's alibi; 3) allegations L.C. had falsely accused
other individuals of sexually abusing her in the past; and 4) the testimony of Frances Recer
and Leo Loyd.
                     1) The Mother's Whereabouts on the Night of the Offense
          Fox alleges his trial counsel failed to seek out the friend, Tonya Heath, with whom
L.C.'s mother claimed she was polishing brass until 3:00 a.m. on the night of the offense. 
Fox contends Heath's testimony would have revealed that, instead of polishing brass until
3:00 a.m., L.C.'s mother was out ingesting methamphetamine until 4:00 or 5:00 that
morning. Trial counsel explained he did not call Heath to testify because he was sure she
would have corroborated the mother's testimony. And it had already been established the
mother did not return home until the early morning hours. Hence, not calling Heath was
a trial strategy and does not constitute ineffective assistance of counsel. 
                     2) Fox's Alibi
          Fox alleges his trial counsel's failure to locate Rebecca Gaudreau was ineffective
assistance of counsel. Gaudreau would have testified that, on the night of the alleged
sexual assault, Fox spent the entire night with her. Trial counsel testified that, before trial,
he and his secretary made an unsuccessful effort to locate Gaudreau. Counsel further
testified no additional efforts were made because Gaudreau had told him she was not a
solid alibi. It was therefore a strategic decision by trial counsel not to call Gaudreau to
testify. 
                     3) Other False Accusations

          Fox alleges his trial counsel failed to present the testimony of Johnnie Latham,
Kenneth Hollingsworth, Roy Glasscock, and Eric Kitchens, all of whom had been accused
of sexual abuse by L.C. Trial counsel testified he spoke to all four of these individuals and
tried several times to get their testimony admitted into evidence, but it was consistently
excluded based on the "rape shield law."


 The exclusion of this testimony was therefore
a procedural bar, not ineffective assistance of counsel.
                      4) Testimony of Recer and Loyd

          Fox contends his trial counsel failed to call Recer, who would have testified he saw
L.C.'s brother put mud on the side of the mobile home, under the window of L.C.'s
bedroom, at the direction of L.C.'s mother. Fox further contends Loyd would have testified
L.C.'s mother told him Fox had not assaulted her daughter. However, trial counsel was
never questioned regarding this evidence at the hearing on the motion for new trial. 
Without an explanation from trial counsel, nothing is presented for review. Goodspeed,
2005 Tex. Crim. App. LEXIS 520; Garcia, 57 S.W.3d at 440. Further, we cannot say
counsel's conduct in this regard was "so outrageous that no competent attorney would
have engaged in it." Goodspeed, 2005 Tex. Crim. App. LEXIS 520, at *5.           
          d. Failure To Hire a Defense Expert
          Fox contends it was ineffective assistance of trial counsel not to hire an expert to
counter the State's expert. At the hearing on the motion for new trial, trial counsel was
asked:
          [Defense]:     Okay. Did it -- did you consider or think about the need
for, potentially, at least, having another expert, counter expert, at least look
at it [the video] to see if there could be any help to offset the anticipated
State's testimony?
 
          [Counsel]:     No.
 
No other explanation was sought or provided as to why trial counsel chose not to hire a
counter expert. Without an explanation from the attorney, nothing is presented for review. 
Goodspeed, 2005 Tex. Crim. App. LEXIS 520; Garcia, 57 S.W.3d at 440. Further, there
is no showing there is a reasonable probability that, but for counsel's failure to hire an
expert, the result of the trial would have been different. Tong, 25 S.W.3d at 712. Finally,
we cannot say, under these facts, counsel's conduct was "so outrageous that no
competent attorney would have engaged in it." Goodspeed, 2005 Tex. Crim. App. LEXIS
520, at *5.
          e. Eliciting Unfavorable Hearsay
          Fox alleges it was ineffective assistance of trial counsel to ask Tammy Morrison,
"[d]idn't she [Gaudreau] tell you that [Fox] was with her that night?" which resulted in the
following response: "She told me that -- I asked her if he was there, she said they were
drinking, she can't promise that he was there, she could not say yes or no." Trial counsel
was not questioned at the hearing on the motion for new trial regarding this issue. Without
an explanation from the attorney, nothing is presented for review. Goodspeed, 2005 Tex.
Crim. App. LEXIS 520; Garcia, 57 S.W.3d at 440. Further, we cannot say counsel's
conduct in this regard was "so outrageous that no competent attorney would have engaged
in it." Goodspeed, 2005 Tex. Crim. App. LEXIS 520, at *5.    
          f. Inability to Present Opinion Testimony 
          Fox contends his trial counsel was ineffective because counsel did not know how
to elicit opinion testimony concerning L.C.'s truthfulness. The record shows that trial
counsel could not qualify Erica Kitchens to testify as to L.C.'s bad reputation for
truthfulness; he therefore withdrew her as a witness. Trial counsel could have qualified
Kitchens as an opinion witness on this subject, but did not do so because he thought the
predicate for qualifying a reputation witness and an opinion witness is the same. Fox,
however, fails to state how this inability was prejudicial to him. Even though this may
constitute deficient performance, Fox fails to show how it prejudiced him.
          g. Failure To Present Evidence of L.C.'s Psychiatric History

          Fox contends his trial counsel was ineffective for failing to further develop testimony
regarding L.C.'s mental and emotional problems. Trial counsel stated numerous times at
the hearing on the motion for new trial that, in hindsight, 
I should have flushed that [L.C.'s mental/emotional problems] out better . . . . 
[I]t didn't impress me perhaps as much as it should have. . . . [Y]es, I wished
I had developed it more during guilt-innocence, and it's regrettable that I
didn't, because I think it is extremely relevant to her ability to accurately recall
what happened to her. 
 
In spite of counsel's regrets, considerable testimony was presented at trial on this subject. 
Further, even if this constitutes deficient performance, Fox has not shown how it prejudiced
him. 
          h. Failure To Move for a Mistrial During State's Closing Argument 
          During the State's closing argument, the following occurred: 
          [State]:          . . . . If you listen to the defense counsel, we let
everybody go free. There [are] 150,000 in Texas prisons, all of them there
is a what if. This is a case of good versus evil. Evil always does try to tempt
you with what if. Look at this.
 
          [Defense]:     Your Honor, I object to referring to the defense as evil.
 
          THE COURT:          All right. Sustained.
 
          [Defense]:     Ask the jury be instructed to disregard the comment.
 
          THE COURT:          Please disregard evil. 
 
          Fox alleges the failure of trial counsel to move for a mistrial deprived Fox of the
effective assistance of counsel. At the hearing on the motion for new trial, trial counsel
testified as follows: 
I didn't ask for a mistrial. I didn't think this Judge was going to grant it, and
in my opinion, if you ask for a mistrial and you don't get it, the jury takes that
as an indication that the Judge -- some indication of the Judge's impression
of the case.
 
          . . . .
 
That was a tactical decision I made. I consciously made that tactical
decision.
 
          Trial counsel made a legitimate strategic decision based on his knowledge and
experience. We cannot say he rendered ineffective assistance in doing so. 
          i. Failure To Object to the State's Injection of Harmful Facts 
           In his brief before this Court, Fox contends that:
During final arguments and wholly outside the record, the State
argued that the defense had failed to show as promised that the case was
about money and then the prosecutor injected wholly new facts: "Hadn't
been a lawsuit filed in over three years."

          Fox argues that, because there was no testimony a lawsuit had or had not been
filed, his trial counsel was ineffective for not objecting to these "new facts." Trial counsel
was not questioned, however, regarding this issue at the hearing on the motion for new
trial. Without an explanation from the attorney, nothing is presented for review. 
Goodspeed, 2005 Tex. Crim. App. LEXIS 520; Garcia, 57 S.W.3d at 440. Further, we
cannot say counsel's conduct in this regard was "so outrageous that no competent attorney
would have engaged in it." Goodspeed, 2005 Tex. Crim. App. LEXIS 520, at *5. Even if
this did constitute deficient performance, Fox fails to show how it prejudiced him.
          j . Failure To Object to Expert's Testimony L.C. Had Been Sexually Abused 

          Fox alleges his trial counsel was ineffective in failing to object to Andrews' testimony
that L.C. had been sexually abused. At the hearing on the motion for new trial, trial
counsel testified he could not recall Andrews' testimony and, without reviewing the
transcript of that testimony, he could not comment on why he did not object. No further
questions were asked on this subject, and counsel was not provided with the transcript of
Andrews' testimony to facilitate counsel's answer. Without an explanation from the
attorney, nothing is presented for review. Goodspeed, 2005 Tex. Crim. App. LEXIS 520;
Garcia, 57 S.W.3d at 440. Further, we cannot say counsel's conduct in this regard was "so
outrageous that no competent attorney would have engaged in it." Goodspeed, 2005 Tex.
Crim. App. LEXIS 520, at *5.
          Fox's contentions of ineffective assistance of counsel are overruled.
BRADY VIOLATION
          Fox contends the State committed a Brady


 violation by suppressing exculpatory
evidence. He identifies L.C.'s psychiatric history and the Child Protective Services (CPS)
report dated May 22, 2001, as the exculpatory evidence. The State responds that the
evidence was not suppressed and, citing Taylor v. State, 93 S.W.3d 487, 502 (Tex.
App.—Texarkana 2002, pet. ref'd), that Fox had full access to this information.
          The Due Process Clause of the Fourteenth Amendment to the United States
Constitution is violated when a prosecutor fails to disclose evidence favorable to the
accused that creates a probability sufficient to undermine confidence in the outcome of the
proceeding. Thomas v. State, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992). In order to
establish a due process violation under Brady, a defendant must show: 1) evidence was
suppressed; 2) the suppressed evidence was favorable to the defense; and 3) the
suppressed evidence was material to either guilt or punishment. Id.; Taylor, 93 S.W.3d at
498–99. 
          The first element of Brady is present if the prosecution actively suppresses evidence
or negligently fails to disclose it. Taylor, 93 S.W.3d at 499. However, the state is not
required to facilitate the compilation of exculpatory material that could have been compiled
by the defense. Id. Thus, without suppression, there is no Brady violation. Id. There is
no Brady violation if it is not shown that the defendant was denied access to the allegedly
favorable material. Id. If the defense has the opportunity to cross-examine concerning the
allegedly exculpatory material and there is no showing the defense would have pursued
a different trial strategy if he or she had known this information sooner, no Brady violation
is shown. Id. 
          The record in the instant case shows that Fox was aware of L.C.'s psychiatric
history. In fact, Fox elicited testimony during the guilt/innocence phase from L.C.'s brother,
Ethan Cassidy, concerning L.C.'s mental history:
          [Defense]:     [L.C.]'s got some pretty severe emotional problems,
correct?
 
          [Ethan]:         Yes, sir.
 
          [Defense]:     All right. She tried to commit suicide?
 
          [Ethan]:         Yes. Yes, sir, she has.
 
          [Defense]:     How many times?
 
          [Ethan]:         I would say about three times.
 
Further, L.C.'s therapist, Andrews, testified on direct examination and was cross-examined
by Fox concerning L.C.'s post-traumatic stress disorder, her suicide attempts, and a
medication she was taking. Fox was aware of L.C.'s medical history, and the record does
not show Fox was restricted from accessing the CPS report. Fox could have independently
compiled the psychiatric history, including the CPS report. Hence, there is no Brady
violation. See id. (prosecutor not required to furnish defendant with exculpatory and
mitigating evidence which is equally and fully accessible to defense). 
          Moreover, Fox, in his opening statement, articulated that his defense would be that
the claim of sexual assault by L.C. was motivated by money, not due to her mental
problems. On appeal, Fox has not shown that his trial counsel would have pursued a
different trial strategy if he had known about the CPS report or L.C.'s psychiatric history. 
Again, there is no Brady violation.
CONCLUSION 
          In summary, the trial court did not abuse its discretion by failing to sua sponte
conduct a hearing to determine L.C.'s mental competency or in overruling Fox's motion for
a mistrial. Fox's own question to the State's expert of whether L.C.'s story appeared to be
realistic induced the response that, in the witness' opinion, L.C. was telling the truth. Fox's
complaint about being limited in his cross-examination of Andrews failed to be specific
enough to put the trial court on notice Fox was making a Confrontation Clause argument. 
The trial court did not abuse its discretion in denying Fox's motion for new trial because the
alleged "new evidence" developed at the hearing on that motion was known by Fox's trial
counsel. Fox did not receive ineffective assistance of counsel. The State did not suppress
evidence, and Fox had full access to the information he contends was suppressed.
          We affirm the judgment.

                                                                Donald R. Ross
                                                                Justice 

Date Submitted:      July 13, 2005
Date Decided:         August 30, 2005

Publish