In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00087-CV


______________________________




DONALD E. FARMER AND MARTHA FARMER, Appellants



V.



CONNIE JEAN BLAZEK CHAPLIN, Appellee




 


On Appeal from the 40th Judicial District Court


 Ellis County, Texas


Trial Court No. 70378




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 On July 21, 2005, Donald E. Farmer and Martha Farmer sued Connie Jean Blazek Chaplin,
seeking to enforce a deed restriction requiring any house on Chaplin's land, as well as on neighboring
land, to have at least "two thousand (2,000) square feet of total area under roof and heat." When the
trial court entered its order of April 26, 2007, the parties had stipulated that Chaplin was then "in
compliance with the deed restrictions" and that the only issue then before the trial court was the
Farmers' attorneys' fees. The Farmers claim that, because Chaplin's house initially violated the
minimum-size restrictions and because the Farmers' lawsuit resulted in remedial measures by
Chaplin to satisfy the restrictions, the Farmers qualified themselves as the "prevailing party" under
Section 5.006 of the Texas Property Code, entitling them to their attorneys' fees. (1) They claim that,
because the trial court refused to grant them their attorneys' fees, it erred. We disagree.

 Whether attorneys' fees are recoverable under a particular statute is a question of law, which
is to be reviewed de novo. Holland v. Wal-Mart Stores, Inc., 1 S.W.3d 91, 94 (Tex. 1999); Jakab
v. Gran Villa Townhouses Homeowners Ass'n, 149 S.W.3d 863, 867 (Tex. App.--Dallas 2004, no
pet.). The statute in question is mandatory, yet requires one to qualify as a prevailing party before
being awarded attorneys' fees under its provisions:

 In an action based on breach of a restrictive covenant pertaining to real property, the
court shall allow to a prevailing party who asserted the action reasonable attorney's
fees in addition to the party's costs and claim.

Tex. Prop. Code Ann. § 5.006(a) (Vernon 2004) (emphasis added). The core issue here is whether
the Farmers became the "prevailing party" within the meaning of Section 5.006(a).

 The term "prevailing party" is not defined by the statute, but the cases generally (2) treat the
entry of a judgment in one's favor as the critical factor in qualifying as a "prevailing party" under
Section 5.006(a). See, e.g., Hawkins, 233 S.W.3d at 400-01; Am. Golf Corp. v. Colburn, 65 S.W.3d
277, 281 (Tex. App.--Houston [14th Dist.] 2001, pet. denied); Ostrowski v. Ivanhoe Prop. Owners
Improvement Ass'n, 38 S.W.3d 248, 255 (Tex. App.--Texarkana 2001, pet. denied); Jim Rutherford
Invs., Inc. v. Terramar Beach Cmty. Ass'n, 25 S.W.3d 845, 853 (Tex. App.--Houston [14th Dist.]
2000, pet. denied) (plaintiff became "prevailing party" by obtaining injunctive relief against
defendant); Gorman v. Countrywood Prop. Owners Ass'n, 1 S.W.3d 915, 917 (Tex.
App.--Beaumont 1999, pet. denied) (plaintiff obtained judgment for delinquent maintenance fees);
Briargrove Park Prop. Owners, Inc. v. Riner, 867 S.W.2d 58, 61 (Tex. App.--Texarkana 1993, writ
denied) (judgment for delinquent maintenance fees); City of Houston v. Muse, 788 S.W.2d 419, 424
(Tex. App.--Houston [1st Dist.] 1990, no writ) (injunctive relief granted); Hanchett v. E. Sunnyside
Civic League, 696 S.W.2d 613, 615 (Tex. App.--Houston [14th Dist.] 1985, writ ref'd n.r.e.) (order
required property owner to remove noncompliant house from lot); Finkelstein v. Southampton Civic
Club, 675 S.W.2d 271, 273 (Tex. App.--Houston [1st Dist.] 1984, writ ref'd n.r.e.) (injunctive
relief); Inwood N. Homeowners' Ass'n v. Meier, 625 S.W.2d 742, 743-44 (Tex. Civ. App.--Houston
[1st Dist.] 1981, no writ) (injunctive relief). The prevailing party is "the party vindicated by the
judgment rendered." Indian Beach Prop. Owners' Ass'n v. Linden, 222 S.W.3d 682, 696-97 (Tex.
App.--Houston [1st Dist.] 2007, no pet.); Jakab v. Gran Villa Townhouses Homeowners Ass'n, 149
S.W.3d 863, 867 (Tex. App.--Dallas 2004, no pet.); see Dear v. City of Irving, 902 S.W.2d 731, 739
(Tex. App.--Austin 1995, writ denied). Even if the parties trade victories on various issues raised
in the case, they can end up not "prevailing" in the ultimate judgment. See Air Park-Dallas Zoning
Cmty. v. Crow-Billingsley Airpark, Ltd., 109 S.W.3d 900, 912 (Tex. App.--Dallas 2003, no pet.).

 The language of the statute itself suggests that a "prevailing party" is one who has received
judgment on his or her claim. That is seen in the language requiring the award of "reasonable
attorney's fees in addition to the party's costs and claim." Tex. Prop. Code Ann § 5.006(a)
(emphasis added). That comports with our conclusion.

 After our review of the cases, we maintain that one must obtain a judgment in his or her favor
to be the "prevailing party" under Section 5.006(a). See Brooks v. Northglen Ass'n, 76 S.W.3d 162,
176 (Tex. App.--Texarkana 2002), rev'd in part on other grounds, 141 S.W.3d 158 (Tex. 2004). 
Because the Farmers did not so prevail, their claim for attorneys' fees fails.

 We affirm the judgment of the trial court.



 


 Josh R. Morriss, III

 Chief Justice


Date Submitted: January 2, 2008

Date Decided: January 31, 2008

1. It should be noted that the issue presented to us is limited to the recovery of attorneys' fees
under Section 5.006(a), not under any other provision such as the Texas Declaratory Judgments Act. 
Under that Act, a trial court has discretion to award "reasonable and necessary attorney's fees as are
equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 1997); see, e.g., Hawkins
v. Walker, 233 S.W.3d 380, 400-01 (Tex. App.--Fort Worth 2007, pet. denied) (both statutes
involved). By contrast, under Section 5.006(a), to which we are restricted, the award of attorneys'
fees is mandatory but is limited to specific conditions.
2. The Farmers cite Bernard v. Glenshire Community Ass'n, No. B14-90-01133-CV, 1992 Tex.
App. LEXIS 192 (Tex. App.--Houston [14th Dist.] Jan. 16, 1992, writ denied) (mem. op.), to
support their position that, because their lawsuit resulted in compliance by Chaplin, though not a
judgment against her, they should be awarded their attorneys' fees. While Bernard does espouse that
position, we believe it is contrary to the general rule in that regard and decline to follow it.


me="Medium List 2 Accent 1"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00147-CR

                                                ______________________________

 

 

                                    LEE EDWARD MORRIS,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 6th Judicial District Court

                                                             Lamar County, Texas

                                                            Trial
Court No. 22425

 

                                                            
                                      

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley

 








                                                     MEMORANDUM 
OPINION

            

            Narcotics
investigators were able to make an audio recording of Lee Edward Morris selling
cocaine to confidential informants, and Morris was convicted by a jury of two
counts of delivery of more than one, but less than four, grams of a controlled
substance.[1]  The jury also found the second of those
deliveries occurred within 1,000 feet of a playground (a drug-free zone).  Punishment was enhanced by Morriss prior
felony convictions for possession of a deadly weapon in a penal institution and
engaging in organized criminal activity. 
Consequently, Morris was sentenced to fifty years imprisonment on the
first count and seventy-five years imprisonment on the second count, to be
served concurrently.  

            On
appeal, Morris first complains that the trial court erred in overruling a Batson[2]
challenge.  We conclude the trial court
did not clearly abuse its discretion in making its ruling.  Morris next complains the trial court erred
in seating the final jury panel, failing to require the court reporter to
record a bench conference during voir dire, and in commenting on Morriss right
not to testify and present mitigating evidence during punishment.  Because Morriss trial counsel failed to
preserve error on these points of error, they are overruled.  Recognizing that preservation would likely
prevent our review on certain points, Morris raised ineffective assistance of
counsel in failing to object to the jury panel and the courts allegedly
impermissible comments during punishment. 
However, Morris failed to sufficiently demonstrate counsels
ineffectiveness and we overrule his ineffective assistance of counsel
claims.   

I.          The Trial Court Did Not
Err in Overruling Morriss Batson Challenge

            The
Equal Protection Clause of the Fourteenth Amendment to the United States
Constitution prevents the exercise of peremptory strikes based on a prospective
jurors race.  Batson v. Kentucky, 476 U.S. 79 (1986); Guzman v. State, 85 S.W.3d 242, 245 (Tex. Crim. App. 2002); Splawn v. State, 160 S.W.3d 103, 114
(Tex. App.Texarkana 2005, pet. refd); see
Tex. Code Crim. Proc. Ann. art.
35.21 (Vernon 2006). 

            Once
a Batson challenge is raised, the
trial court engages in a three-step inquiry. 
Purkett v. Elem, 514 U.S. 765,
76768 (1995); Ford v. State, 1
S.W.3d 691, 693 (Tex. Crim. App. 1999); Montgomery
v. State, 198 S.W.3d 67, 76 (Tex. App.Fort Worth 2006, pet. refd).  Under the first step, the person raising a Batson challenge is required to make a
prima facie showing of racial discrimination. 
Ford, 1 S.W.3d at 693; Montgomery, 198 S.W.3d at 76.  Once that prima facie showing is
accomplished, the burden shifts to the State to present a racially neutral
reason for the challenged jury strikes.  Ford, 1 S.W.3d at 693; Montgomery, 198 S.W.3d at 76.  Third, and finally, once the States reason
is proffered, the burden of persuasion shifts back and the person raising the
challenge must then convince the court that the reason given by the State was
not race-neutral, and was merely pretext for concealing discrimination.  Ford,
1 S.W.3d at 693 (citing Purkett, 514
U.S. at 76768). 

            We
review the evidence relevant to the Batson
challenge in the light most favorable to the trial courts ruling.  Cantu
v. State, 842 S.W.2d 667, 689 (Tex. Crim. App. 1992); Roberts v. State, 963 S.W.2d 894, 899 (Tex. App.Texarkana 1998, no
pet.).  A high degree of deference is
given to the trial court, who is in the best position to determine if the States
facially neutral explanation for a peremptory strike is genuine.  Splawn,
160 S.W.3d at 114 (citing Jasper v. State,
61 S.W.3d 413, 42122 (Tex. Crim. App. 2001)). 
Thus, a clearly erroneous standard of review is applied to the trial
courts decision to overrule a Batson
challenge.  Hernandez v. New York, 500 U.S. 352, 369 (1991); Splawn, 160 S.W.3d at 114 (citing Gibson v. State, 144 S.W.3d 530, 534
(Tex. Crim. App. 2004)).  A finding is
clearly erroneous where the reviewing court is left with the definite and firm
conviction that the trial court committed a mistake.  Roberts,
963 S.W.2d at 899. 

            During
voir dire, the State individually elicited veniremember responses to the
following inquiry: 

            There
are a number of theories about why jurors do what they do, and jurors punish
and return the verdicts that they return, because in the same case, same set of
facts, two separate juries will do two completely different things.  

            So
people who study this sort of thing have found three common themes among
jurors, why jurors set the sentences that they do.  Some jurors will return a sentence because
they want to keep other people from committing the same or similar crimes [punishment
theory one]; . . . . 

            Some
jurors favor number two, rehabilitation; were going to try to help the person
who has committed this crime, were going to give them probation, or were
going to recommend that they go to a mental hospital, or whatever the case
might be.  

            . . . some jurors out there just want to punish that
defendant for what hes done, to send a message to him [punishment theory
three] . . . . 

            . . . . I want to find out from you which of these
theories you subscribe to.   

 

After the State presented its
list of peremptory strikes, Morriss counsel objected that the State improperly
struck Sarah Williams (juror number eight) and Elane Hill (juror number eleven)
from the jury based on their African-American race.  The State proffered this race-neutral reason
for striking Williams and Hill: 

The Court may recall that I asked the jury panel,
as a whole, their particular theories on punishment, whether it was the
deterrence, rehabilitation or punishment for punishments sake.  I asked the jurors to give me their number,
one, two or three, whichever one they chose.  

            Two
was rehabilitation.  If a juror felt that
rehabilitation would be the guiding principle or the theory behind which he
would set punishment, I wrote down by that jurors name, two.  I went back to the jury room, and in counting
up the numbers, I discovered that 12 potential jurors had identified
rehabilitation as the theory behind how they would assess punishment, or the
criteria they would use to assess punishment in this case.  

            I
think [Morriss counsel] would agree with me, this is a punishment case.  Guilt is not the real issue here.  Both transactions were captured on
videotapes.  The real issue in this case
is going to be what kind of sentence is the defendant going to receive.  

            All
of the jurors that answered, rehabilitation, I struck.  There were white jurors, there were black
jurors, there were some jurors that, quite frankly, I would like to have
kept.  I struck every juror, white,
black, Hispanic, Indian, Asian, whoever they were, I struck every single juror
that answered rehabilitation as their punishment theory.

 

Indeed, each of the veniremembers
peremptorily struck by the State (including Williams and Hill) responded
affirmatively that they believed in the theory of punishment number two posited
by the Staterehabilitation.  The State
pointed out that it exhausted its peremptory strikes and would have struck even
more members of the jury pool who believed in the second theory of punishment
if it had additional strikes.  Once the
States reasoning was offered, and it was confirmed that all the veniremembers struck
by the State responded they believed in the second theory, Morriss counsel
failed to argue that the States reasoning was pretext for discrimination.  Counsel merely stated he was making an
objection for the record.  

            In
Montgomery and Victor, our sister courts found that a veniremembers belief in
rehabilitation as the primary goal of punishment is a race-neutral reason for
the exercise of a peremptory challenge.  Montgomery,
198 S.W.3d at 76; Victor v. State,
995 S.W.2d 216, 222 (Tex. App.Houston [14th Dist.] 1999, pet. refd).  We conclude that the trial courts finding
(i.e., that the State proffered a sufficient race-neutral reason for striking
Williams and Hill and that Morris failed to meet his burden of persuasion to
demonstrate otherwise) was not clearly erroneous.  See
Splawn, 160 S.W.3d at 115.

            In
his appellate brief, Morris additionally argues that the State struck jurors thirty-one
and thirty-two, but did not strike juror number thirty, who also subscribed to
the rehabilitation punishment theory. 
However, this challenge to the States race-neutral reason was never
presented to the trial court.[3]  Because the trial court was thus unable to
consider this argument, it is not preserved for our consideration.  

            Morriss
first point of error is overruled.   

II.        Morris
Did Not Preserve Remaining Claims of Trial Court Error 

            A.        Seating
a Peremptorily Struck Juror on the Jury Panel

            Morriss counsel peremptorily struck
Ricky Bond and listed him as juror number 36.  A review of the jury list reveals that Bond
was actually juror number 35 and that juror number 36 was Gary Reed, who was
not chosen to be on the jury and whose name did not appear on either strike
list.  Morris argues on appeal that the
trial court erred in allowing Bond to sit on the jury and also erred because Reed
should be juror #9 instead of Bond.  

            It
is well settled that it is the responsibility of the parties to assure that the
jury impaneled does not include a juror that has been struck. 
Jackson v. State, 826 S.W.2d 751, 752 (Tex. App.Houston [14th
Dist.] 1992, pet. refd); see also Miller
v. State, 692 S.W.2d 88, 93 n.10 (Tex. Crim. App. 1985).  The party must object before the panel is
sworn, or else show that the juror was otherwise disqualified because of
prejudice toward the appellant.  Jackson, 826 S.W.2d at 752; Miller, 692 S.W.2d at 93 n.10.  No objection was lodged to Bond being seated
on the jury as opposed to Reed, and Morriss counsel affirmatively stated he
did not contest any jury members qualification to sit on the panel. 

            B.        Failure
of Court Reporter to Record Bench Conference

            Morris next complains that the trial
court denied him the right of review by failing to make the services of the
court reporter available during a bench conference.[4]   It is uncontested that the court reporter
was available and present in the courtroom during the bench conference, but
failed to record it.  Morris cites this
Court to the rule stating that a court reporter has a duty to record all
proceedings unless expressly waived.  Tex. R. App. P.
13.1.  We have previously held that this
Rule does not excuse counsel from the requirement to preserve error through an
objection if the court reporter fails to make a record as required.  Rittenhouse
v. Sabine Valley Ctr. Found., Inc., 161 S.W.3d 157, 161 (Tex.
App.Texarkana 2005, no pet.); see also
Jones v. State, 942 S.W.2d 1, 2 (Tex. Crim. App. 1997) (en banc) (objection
required to preserve error stemming from failure to transcribe voir dire
proceedings)[5];
Valle v. State, 109 S.W.3d 500, 50809
(Tex. Crim. App. 2003) (holding objection required to preserve error if bench
conference not recorded).  Counsel for
Morris failed to object to the failure of the court reporter to transcribe the
bench conference.  

 

            C.        Comment
on Morriss Right Not to Testify and Present Mitigating Evidence

            Immediately after the enhancement
paragraphs were read during the punishment phase of the trial, the court
advised Morris that you have the right to remain silent during the punishment
phase of the trial and to present evidence of mitigation at punishment.  Do you understand that?, to which Morris
replied Yes, sir.  In his appellate
brief, Morris interprets this exchange as an improper comment on his right not
to testify and present mitigating evidence in front of the jury.  Again, counsel failed to object to the trial
courts comments, perhaps because he felt the courts comments were merely an
admonishment, rather than improper comments. 

            D.        Lack
of Preservation Prevents Our Review 

            In
order to preserve these points of error for our review, Morris was required to
present a timely, specific objection to the trial court and secure an adverse
ruling.  Tex. R. App. P. 33.1; Fox v. State, 175 S.W.3d 475, 481 (Tex. App.Texarkana 2005, pet.
refd).  Because his counsel failed to
object to the above alleged errors regarding the failure of the court reporter to
transcribe the bench conference and the comments by the trial court, they were
unpreserved and nothing is presented for our review.  Thus, they are overruled.       

III.       The Record Does Not
Demonstrate that Morriss Counsel Was Ineffective 

            In his final point,
Morris argues that his counsel was ineffective for failing to object to Bonds
placement on the jury, Reeds exclusion from the jury, and the trial courts
alleged improper comments on Morriss failure to testify and present mitigating
evidence.  

            A.        Standard
of Review 

            Morriss allegations of his counsels
ineffectiveness must be firmly founded in the record. Goodspeed v. State, 187 S.W.3d 390, 392 (Tex.
Crim. App. 2005); Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999);
Wallace v. State, 75 S.W.3d 576, 589 (Tex. App.Texarkana 2002), affd, 106 S.W.3d 103 (Tex. Crim.
App. 2003).  Trial counsel should
ordinarily be afforded an opportunity to explain his actions before we find
the attorneys performance was ineffective.  Goodspeed, 187 S.W.3d at 392; Rylander
v. State, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003); Fox, 175 S.W.3d at 48586. 
Absent such opportunity, we will not find deficient performance unless
the challenged conduct was so outrageous that no competent attorney would have
engaged in it.  Goodspeed, 187 S.W.3d at 392; Fox, 175 S.W.3d at 486.  For this reason, direct appeal is usually an
inadequate vehicle for raising such a claim because the record is generally
undeveloped. Thompson, 9 S.W.3d at
81314; Fox, 175 S.W.3d at 485.  

            We evaluate Morriss
ineffective assistance of counsel claims using the two-part Strickland test formulated by the United
States Supreme Court, which requires a showing of both deficient performance
and resulting prejudice.  Strickland v. Washington, 466 U.S. 668,
68788 (1984); Thompson, 9 S.W.3d at
812; Fox, 175 S.W.3d at 485.  Under the first prong of the Strickland test, Morris must show that
his counsels representation fell below an objective standard of
reasonableness.  Fox, 175 S.W.3d at 485 (citing Tong
v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000)).  There is a strong presumption that counsels
conduct fell within the wide range of reasonable professional assistance and
that the challenged action could be considered sound trial strategy.  Strickland, 466 U.S. at 689; Ex
parte White, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); Tong, 25 S.W.3d at 712.  Therefore, we will not second guess the
strategy of Morriss counsel through hindsight. 
Blott v. State, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); Hall
v. State, 161 S.W.3d
142, 152 (Tex. App.Texarkana 2005, pet. refd).  In this case, since the record is silent as
to why counsel failed to object to Bonds inclusion on the jury, Reeds
exclusion from the jury, and the courts allegedly improper comments on Morriss
failure to testify and present mitigating evidence, we will assume it was due
to any strategic motivation that can be imagined.  Mata v. State, 226 S.W.3d 425, 431
(Tex. Crim. App. 2007); Garcia v. State, 57 S.W.3d 436, 441 (Tex.
Crim. App. 2001); Fox, 175 S.W.3d at 48586. 

            The
second Strickland prong requires a
showing that the deficient performance prejudiced the defense to the degree
that there is a reasonable probability that, but for the attorneys deficiency,
the result of the trial would have been different.  Strickland, 466 U.S. at 689; Tong, 25 S.W.3d at 712.  A reasonable probability is a
probability sufficient to undermine confidence in the outcome.  Mitchell v. State, 68 S.W.3d 640, 642
(Tex. Crim. App. 2002).  Failure to satisfy either prong of the Strickland
test is fatal.  Ex parte Martinez,
195 S.W.3d 713, 730 (Tex. Crim. App. 2006). 


            B.        Failure to Object to Jury
Selection 

            There
is no record explaining counsels reasons for failing to object to Bonds
inclusion and Reeds exclusion from the jury panel.  Counsels peremptory strike lists Bonds
name, but incorrectly cites his juror number as Reeds juror number.  Thus, it is possible counsels intention was
to strike Reed and keep Bond on the jury panel. 
Absent a record demonstrating otherwise, we apply the strong presumption
that counsels conduct fell within the wide range of reasonable professional
assistance.  Strickland, 466 U.S.
at 689; White, 160 S.W.3d at 51; Tong, 25 S.W.3d at 712.  

            Morris
attempts to meet the second Strickland prong
by arguing that since Reed believed in rehabilitation punishment theory (second
theory), and Bond believed in punishing a defendant to send a message (third
theory), his sentence would have been less severe if Reed had been seated on
the jury instead of Bond.  Yet, the
makeup of the final jury consisted of four jurors who believed in the third
theory of punishment and two jurors who believed in the second theory of
punishment. Placing Reed on the jury would have led to an equal amount of
jurors believing in the second and third punishment theories.  In any event, the remaining majority of
jurors believed in the first theory of punishmentprevention of further
crime.  Given the evidence in this case
and the fact that jurors representing all three theories of punishment rendered
a unanimous verdict as to sentencing as instructed by the trial courts charge,
Morris cannot demonstrate with reasonable probability that the result of
the trial would have been different absent his counsels alleged error. 

C.        Failure
to Object to Trial Courts Allegedly Improper Comment on Failure to Testify and
Present Mitigating Evidence

 

            Finally,
Morris argues that his counsel was ineffective for having failed to
lodge an objection to the trial courts instruction to Morris in the presence
of the jury that he had the right to remain silent and the right to present
mitigating evidence.  It is possible that
counsel believed that the courts comments favorably aided in explaining to the
jury that Morris was neither required to testify nor present mitigating
evidence.  Alternatively, even if counsel
believed the trial courts comment was damaging, counsel may have taken the
position that to lodge an objection would have served little purpose except to
draw the jurys attention to Morriss failure to testify or the lack of
mitigating evidence, thereby magnifying its significance.  Again, absent a record containing counsels
explanations, we will not find deficient performance since the failure to
object in this circumstance was not so outrageous that no competent attorney
would have engaged in it. Goodspeed, 187 S.W.3d at 392; Fox,
175 S.W.3d at 486.  

            Moreover,
the jury charge instructed the jury not to consider Morriss failure to testify
and to only consider facts in evidence.  Absent evidence to the contrary, we will
presume that the jury followed the trial courts instructions in the
charge.  See Reynolds v. State, 227 S.W.3d 355, 367 (Tex. App.Texarkana
2007, no pet.).  Thus, because the jury
presumably followed the charge, Morris is unable to demonstrate the result of
the trial would have been different absent trial counsels alleged error. 

IV.       Conclusion


            We
affirm the judgment of the trial court.  

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          April 14, 2010

Date Decided:             April 23, 2010

 

Do Not
Publish











[1]Laboratory
reports found 1.14 grams and 1.56 grams of cocaine were contained in the
deliveries.  

 





[2]Batson v. Kentucky, 476 U.S. 79 (1986). 





[3]A
defendant who raises a Batson claim at trial forfeits his opportunity
to complain on appeal about what his response to the States race neutral
reasons would have been when he fails to timely present his evidence in
rebuttal of the States race neutral reasons. 
Hill v. State, No.
10-03-00281-CR, 2005 WL 170552, at *1 (Tex. App.Waco Jan. 26, 2005, pet. refd)
(mem. op., not designated for publication). 






[4]Morris
concedes that the trial court was taking up challenges for cause during the
bench conference, a portion of which was recorded by the reporter.  The Batson
challenge was made after the bench conference, which was fully recorded and
preserved for our review.  Since Morris
has not proffered a point of error dealing with challenges for cause, we have
not been shown how the omitted portion of the bench conference would hinder our
review of this appeal. 

 





[5]Morris
challenges that Rule 34.6 of the Texas Rules of Appellate Procedure entitles
him to a new trial if a significant portion of the reporters record is lost or
destroyed.  Tex. R.
App. P. 34.6.  As Jones discusses, since the record was
never created, this Rule will not apply. 
942 S.W.2d 1, 2.