In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00136-CR


______________________________




JESSIE RUIZ, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the Criminal Judicial District Court #4


Dallas County, Texas


Trial Court No. F07-23594-K




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Jessie Ruiz was tried on six charges arising from two separate encounters with law
enforcement officers, was convicted of all six charges (including this one, a charge of possession of
between four grams and 200 grams of methamphetamine with the intent to deliver, for which he
received a sentence of twenty years' and four months' imprisonment), (1) and has appealed each of those
convictions. The basis for each of his complaints rests upon a claim that he received ineffective
assistance of counsel. (2) Ruiz's allegations arise over the lack of any objection by his trial counsel
when the State made three separate comments during closing arguments. We disagree, hold that
Ruiz failed to show that he received ineffective assistance of counsel, and affirm all six convictions. 

I. Factual Background 

 In the first encounter, during the early morning hours of March 10, 2007, Ruiz slammed a
car into a signal light pole, knocking it to the ground, damaging the car sufficiently that it was
rendered "not drivable [sic]." The investigating officer discovered that Ruiz had no proof of liability
insurance and purposed to impound the vehicle. A routine inventory of the automobile incident to
its impoundment found it to contain seventy-eight grams of methamphetamine, two bags containing
marihuana, crack cocaine, scales used to weigh drugs, a realistic-looking plastic BB gun, a used
syringe, small plastic bags, and other assorted drug paraphernalia. After this discovery, Ruiz was
promptly arrested and indicted on several counts as a result of this incident, including: 1) possession
of methamphetamine in an amount more than four grams but less than 200 grams with intent to
distribute; 2) possession of marihuana in an amount over four ounces but less than five pounds; and
3) possession of less than one gram of cocaine. In due course, Ruiz was released from jail. 

 More troubles with the operation of a motor vehicle precipitated Ruiz's next police encounter. 
At two in the morning on July 10, 2007 (while the cases arising from the first incident were still
pending trial), another Dallas police officer, T. W. McClure, observed a red Ford pickup truck
driving on the wrong side of the road. McClure switched on his red and blue lights and stopped the
truck, driven by Ruiz. McClure approached the truck and asked Ruiz to produce his driver's license
for inspection, but a nervous Ruiz failed to respond to the request. As McClure asked him to step
out of the truck and reached to open the door, Ruiz accelerated and sped away. McClure ran back
to his patrol car and chased, with sirens blaring, after Ruiz. During the ensuing chase, Ruiz
proceeded against the flow of traffic on a one-way street; per Dallas police policy, McClure
terminated the chase rather than follow.

 Forty minutes later, McClure caught sight of the truck again and resumed his pursuit,
initiating a fifteen-minute high-speed chase (during which McClure estimated the speed of the truck
at ninety miles per hour on main roads and sixty to seventy miles per hour through residential areas). 
Two other patrol cars (one driven by Officer M. L. St. Clair and another driven by Officer K. D.
Tyler) joined the chase. As is typical of many high-speed police chases, Ruiz lost control of the
truck, driving it into a tree. Ruiz then jumped out of the truck and continued his flight on foot
through the residential area in which he was then located. St. Clair, following on foot, tackled Ruiz
to the ground and the two began to wrestle. 

 Ruiz swung his arms at St. Clair and struck him in the chest. St. Clair got on top of Ruiz and
administered a level one lateral vascular neck restraint. As St. Clair was attempting to secure a level
two restraint, (3) he felt a tug on his right side and saw that Ruiz had grasped his pistol and holster. 
St. Clair screamed for assistance and instinctively rolled on his side to prevent Ruiz from gaining
full access to the pistol. Tyler ran to the wrestling match and struck Ruiz on his head twice with his
flashlight, whereupon Ruiz released his grasp on the pistol, but continued to resist and even grabbed
St. Clair's pepper spray. The two officers could not restrain Ruiz by themselves. 

 Finally, McClure arrived at the scene of the brawl and administered pepper spray in Ruiz's
face. This enabled the three officers to gain control of Ruiz and place him in handcuffs. As they
were escorting Ruiz to a patrol car, a crowd (apparently consisting of family or friends of Ruiz)
became unruly and screamed at the police officers. The crowd was controlled, Ruiz was placed in
the back of a patrol car, and the officers conducted a search of the truck Ruiz had been driving. The
search revealed methamphetamine.

 As a result of this second incident, Ruiz was charged with evading arrest, possession of
between one and four grams of methamphetamine, and attempt to take a weapon from a police
officer. The charges from the March 10 and July 10 incidents were combined and Ruiz entered a
plea of guilty to all six counts, with punishment to be decided by a jury. 

 Ruiz complains that his counsel was ineffective because he failed to object to certain
statements made by the State during jury argument at punishment; those statements discussed parole,
referenced plea bargains, and allegedly introduced new evidence.

II. Standard of Review

 Any allegation of ineffectiveness must be firmly founded in the record. Goodspeed v. State,
187 S.W.3d 390, 392 (Tex. Crim. App. 2005); Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim.
App. 1999). From the record received by this Court, Ruiz bears the burden of proving by a
preponderance of the evidence that counsel was ineffective. See Goodspeed, 187 S.W.3d at 392;
Thompson, 9 S.W.3d at 813; Cannon v. State, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984). We
apply the two-pronged Strickland test handed down by the United States Supreme Court to determine
whether Ruiz received ineffective assistance of counsel. Strickland v. Washington, 466 U.S. 668
(1984). Failure to satisfy either prong of the Strickland test is fatal. Jaubert v. State, 74 S.W.3d 1,
9 n.2 (Tex. Crim. App. 2002). Thus, if one of the prongs of the Strickland test cannot be met, we
need not examine the other. Strickland, 466 U.S. at 697. 

 Ruiz must first show counsel's performance fell below an objective standard of
reasonableness when considering prevailing professional norms. Id. at 687-88. "This requires
showing that counsel made errors so serious that counsel was not functioning as the 'counsel'
guaranteed the defendant by the Sixth Amendment." Sanchez v. State, No. 07-06-0435-CR, 2008
Tex. App. LEXIS 4363, at *3 (Tex. App.--Amarillo June 13, 2008, no pet.) (mem. op., not
designated for publication). Our review of counsel's performance is highly deferential. Ex parte
White, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim.
App. 2000). There is a strong presumption that counsel's conduct fell within the wide range of
reasonable professional assistance and that the challenged action could be considered sound trial
strategy. Strickland, 466 U.S. at 689; White, 160 S.W.3d at 51; Tong, 25 S.W.3d at 712. Therefore,
we will not second guess the strategy of counsel at trial through hindsight. Blott v. State, 588 S.W.2d
588, 592 (Tex. Crim. App. 1979); Hall v. State, 161 S.W.3d 142, 152 (Tex. App.--Texarkana 2005,
pet. ref'd). Where the record is silent as to why counsel failed to make an objection or take certain
actions, we will assume it was due to any strategic motivation that can be imagined, and the
appellant will have failed to rebut the presumption that trial counsel's actions were in some way
reasonable. Mata v. State, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); Garcia v. State, 57 S.W.3d
436, 441 (Tex. Crim. App. 2001); Fox v. State, 175 S.W.3d 475, 485-86 (Tex. App.--Texarkana
2005, pet. ref'd). In other words, we will not conclude the challenged conduct deficient unless it was
so outrageous that no competent attorney would have engaged in it. Thompson, 9 S.W.3d at 808;
Fox, 175 S.W.3d at 485-86. 

 Next, it is not enough for Ruiz to show that the errors had some conceivable effect on the
outcome of the proceeding. See Strickland, 466 U.S. at 693. To meet the second prong of the
Strickland test, Ruiz must show that the deficient performance damaged his defense to such a degree
that there is a reasonable probability the result or outcome of the trial would have been different. 
Id.; Tong, 25 S.W.3d at 712. We evaluate this factor while taking into consideration the totality of
representation and the particular circumstances of this case. Thompson, 9 S.W.3d at 813; Ex parte
Felton, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991). 

III. Application 

 A. The State's Argument Regarding Parole Was Proper 

 In accord with Article 37.07 of the Texas Code of Criminal Procedure, the trial court's
punishment charge stated:

 It is also possible that the length of time for which the defendant will be imprisoned
might be reduced by the award of parole.


 . . . if the defendant is sentenced to a term of imprisonment, he will not become
eligible for parole until the actual time served equals one-fourth of the sentence
imposed or 15 years, whichever is less, without any consideration of any good
conduct time []he may earn. 


 . . . .


 You may consider the existence of the parole law and good conduct time. However,
you are not to consider the extent to which good conduct time may be awarded to or
forfeited by this particular defendant. You are not to consider the manner in which
the parole law may be applied to this particular defendant.


See Byrd v. State, 192 S.W.3d 69, 71 (Tex. App.--Houston [14th Dist.] 2006, pet. ref'd).

 Ruiz complains that the State made an improper jury argument regarding parole when
arguing the following:

 A couple of things I would like to point out to you. On the two larger cases,
the 2 to 10 and the 5 to 99 or life, the Judge read you a portion about parole. What
you get to know about those two cases is those two cases, a person becomes eligible
for parole after serving one-quarter of their time or 15 years, whichever is less. 
Okay? 

 

 So let's take, for example, somebody gets 20 years. A quarter time is 5. It's less than
the 15, so they're eligible for parole in 5. That includes good time. All right? Make
sense? 

 

 Now, let's say somebody got 70. Quarter time of that is 17 and a half. 15 is less than
17 and a half, so they would become eligible in 15. What the law says is you can't
go back and say, Hey, let's give somebody 50 because they're going to be eligible in
a quarter time. Can't do that. But the law does say you can be aware of that for your
deliberations. Okay?


The State may explain the parole law's existence. Taylor v. State, 233 S.W.3d 356, 358 (Tex. Crim.
App. 2007); see also Taylor v. State, 911 S.W.2d 906, 911-12 (Tex. App.--Fort Worth 1995, pet.
ref'd) (State's jury argument that "if a person is sentenced to 20 years . . . then they become eligible
to be considered for release on parole after one quarter, which is five" merely discussed the trial
court's charge and was proper). This issue has been decided by the Texas Court of Criminal Appeals
and by this Court. Taylor, 233 S.W.3d at 358; Johnson v. State, No. 06-04-00038-CR, 2004 Tex.
App. LEXIS 11106, at *2-3 (Tex. App.--Texarkana Dec. 10, 2004, no pet.) (not designated for
publication) (holding counsel's failure to object to State's argument regarding parole law not
ineffective assistance of counsel).

 In Taylor, the trial court's jury charge tracked the parole language employed by the trial court
in this case. 233 S.W.3d at 358. During closing argument, the State argued, "A 40-year sentence
means the defendant becomes eligible for parole after serving 20 years.  . . . A 60-year sentence
means he becomes eligible after serving 30 years. A sentence of life or 75 still means he becomes
eligible after 30 years." Id. The Texas Court of Criminal Appeals held this argument was proper
because the State "did not convey any information beyond what was properly contained in the charge
when he explained how the parole eligibility rules set out in the charge worked with forty, sixty and
seventy-five year sentences." Id. at 359. 

 In Sanchez, the defendant complained that the State's argument that the jury would "see that
the only protection of the community that you can be assured of would be half of whatever you send
him," and the State's calculation if "you send him for 40 years, he would only be there for 20," was
an "attempt to inappropriately apply the parole law" to the defendant. 2008 Tex. App. LEXIS 4363,
at *6. The Amarillo Court of Appeals held defendant's counsel was not ineffective in failing to
object because the State committed no error since the language regarding parole during jury
argument merely tracked the trial court's jury charge. Id. at *6-7. 

 Here, as in Taylor and Sanchez, the State merely tracked the language in the jury charge and
explained the application of the parole formula in general terms. As such, no error was committed.

 Ruiz's first point of error is overruled.

 B. Plea Bargain

 Unless clearly invited by defense counsel or introduced as evidence by the defense, attempts
at plea bargaining should never be alluded to in argument by prosecutors. Clayton v. State, 502
S.W.2d 755, 757 (Tex. Crim. App. 1973). During jury argument, the State said, "You know,
sometimes the reality is that the State and the defendant can't agree on a plea bargain. That's why we
have the 12 of you." (4)

 Even assuming arguendo that this argument constituted error, declining to object to a portion
of the State's argument is often an inherently tactical decision based on the way the trial is unfolding
and the trial strategy employed. Taylor v. State, 947 S.W.2d 698, 704 (Tex. App.--Fort Worth 1997,
pet. ref'd). Counsel could have made a tactical decision not to draw attention to, or re-enforce the
State's argument in front of the jury. Absent a record stating the reasons for counsel's failure to
object, we will not second guess counsel through hindsight. Claims of ineffective assistance of
counsel are often best developed through motions for new trial. Thompson, 9 S.W.3d at 814. We
have no such evidence as might have been developed at such a hearing here. Further, Ruiz failed
to brief or otherwise demonstrate how counsel's failure to object to this singular statement would
have resulted in a different outcome. Therefore, since Ruiz failed to meet either prong of the
Strickland test, this point of error is overruled. 

 C. No New Evidence Was Interjected During the State's Closing Argument

 Finally, Ruiz contends the following jury argument interjected new evidence:

 So I submit to you these incidents, state jails, third degrees, one first degree
case, this is nothing to be looked at individually because they were not done by
separate individuals. They were done by one person, Mr. Ruiz. I submit to you that
you look at everything that he's done and you take that and you look at it and you say,
where does he fall between that 5 or the low end to 99 years or life on the high end? 
Do we take off five years because he did not get the weapon? Do we take off five
years because he was not able to take the pepper spray from the officer? Do we take
off five years because he was not able to successfully force Officer St. Clair off his
back? Do we take off five years because he did not have a car wreck and hurt
somebody in the community on the streets? Do we take off five years because he
was able to not harm any others on the street? Or do we take off five years because
not only did he not take out -- he took out a traffic stop, but he hit -- didn't hit parked
cars he swerved around.


 Areas of proper jury argument include summation of the evidence presented at trial, answer
to argument made by opposing counsel, or plea for law enforcement. Jackson v. State, 17 S.W.3d
664, 673 (Tex. Crim. App. 2000); Gaddis v. State, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). 
A "jury argument must be extreme or manifestly improper, or inject new and harmful facts into
evidence to constitute reversible error." Gaddis, 753 S.W.2d at 398. 

 We reject Ruiz's theory that the jury argument above interjected new evidence which had not
been presented. It does no more than summarize some of the evidence elicited by officers during
the trial, evidence which established that although he tried, Ruiz was unable to gain control of
St. Clair's weapon or pepper spray, that Ruiz was eventually controlled by the officers, that no one
was physically harmed during either the March 10 or the July 10 incidents, and that he did not collide
with any other vehicles during either incident. Additionally, we believe that the argument was
merely a plea for law enforcement. Because the State's argument was proper, counsel was not
required to object. Therefore, the failure of Ruiz's counsel to object to this argument did not deny
him the effective assistance of counsel. 

IV. Conclusion

 We hold that Ruiz's counsel was not required to object to the State's proper references to
parole and its plea for law enforcement. Ruiz also failed to meet his burden to prove that he was
prejudiced by virtue of his counsel's failure to object to the State's reference to plea bargaining. 
Accordingly, we find that Ruiz failed to show that he was denied the effective assistance of counsel
during the punishment trial. 

 We affirm the judgment. 




 Bailey C. Moseley

 Justice


Date Submitted: January 5, 2009

Date Decided: January 8, 2009


Do Not Publish


1. In cause numbers 06-08-00137-CR, 06-08-00138-CR, and 06-08-00139-CR, he appeals
convictions for possession of marihuana in an amount between four ounces and five pounds,
possession of less than one gram of cocaine, and evading arrest, respectively. In these three cases,
Ruiz was sentenced to two years' imprisonment in a state-jail facility, to run concurrently. Ruiz also
appeals his conviction in cause number 06-08-00140-CR of possession of methamphetamine in an
amount between one and four grams. Ruiz was sentenced in this case to five years' imprisonment,
to run concurrently. Finally, in cause number 06-08-00141-CR, Ruiz was convicted of attempting
to take a weapon from a police officer, for which he received two years' imprisonment in a state-jail
facility, to run concurrently, and was assessed a $2,000.00 fine. 
2. The conviction having been in Dallas County, this case was originally appealed to the Fifth
Court of Appeals and was then transferred to this Court by the Texas Supreme Court pursuant to its
docket equalization efforts. See Tex. Gov't Code Ann. § 73.001 (Vernon 2005). We are unaware
of any conflict between precedent of the Fifth Court of Appeals and that of this Court on any relevant
issue. See Tex. R. App. P. 41.3.
3. With a level one (or clinical) restraint, pressure is applied to both sides of the neck with the
trachea and throat being protected in the crook of the elbow. Pressure is applied by squeezing the
forearm and bicep together, while pressing in and down on the elbow. No pressure is directed to the
throat, and the subject can still breathe and speak with only minimal discomfort. With a level two
(or locked) restraint, the pressure application is identical, but this restraint is locked into position
with the subject's second arm. By locking a vascular restraint into position, it prevents the restraint
from sliding into a respiratory restraint (bar-arm choke hold), which is common during an actual
physical struggle. http://www.brazilianjiujitsugear.com/forums/showthread. php?t=5201.
4. In most plea bargain negotiations, one of the issues involves whether the defendant would
enter a guilty plea. In such a circumstance, if a jury heard mention of plea negotiations, it might infer
that the defendant would have entered a plea of guilty if promised a light sentence. However, the
potential impact of a statement such as this is substantially reduced when, as here, a plea of guilty
is entered, rendering the sole negotiation point as being the penalty to be assessed.


so-element:para-border-div;border:solid white 1.0pt;mso-border-alt:
 solid white .75pt;padding:0in 0in 0in 0in'>
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00157-CR

                                                ______________________________

 

 

                                 GARY JORDAN COZZENS,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 8th Judicial District Court

                                                           Hopkins County, Texas

                                                          Trial Court
No. 0820401

 

                                                        
                                          

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            Having
been convicted by a jury of one count of aggravated sexual assault of a child
and two counts of indecency with a child by sexual contact, Gary Jordan Cozzens
was sentenced to life sentences on each of the three charges and ordered to
serve them concurrently.  

            On
appeal, Cozzens claims that the trial court erred in admitting certain medical
records and expert testimony and complains further that the evidence was
factually insufficient to support the verdict. 
Because we find that the trial court did not err in the admission of the
complained-of medical records and expert testimony and because Texas law no
longer recognizes a claim of factual insufficiency of the evidence as a basis
for review on appeal, we affirm the judgment of the trial court.[1]  

I.          BACKGROUND

            Cozzens and his
former wife, Darla Niehay, are the parents of two daughters, Ila and Julia.[2]  Cozzens, released from prison in 2008, met
with Niehay on two occasions at a McDonalds restaurant in Fort Worth regarding
the girls and as a result of those meetings, arrangements were made for Ila,
age thirteen, and Julia, age seventeen, to visit Cozzens at his residence in
Cumby, Hopkins County, Texas.  Ila
(unaccompanied by Julia) visited Cozzens and his current wife in their
residence over a weekend in July 2008. 
Approximately one week later, Ila (but not Julia) stayed with Cozzens
and his wife again, this time for an additional week.  On Ilas third and final week-long visit with
Cozzens and his wife, Julia joined Ila in Cumby for a weekend during that
time.  

            Ila
was diagnosed at Cook Childrens Medical Center in Fort Worth as suffering from
genital herpes in August 2008, and was examined September 2, 2008, by Dr. Jamye
Coffman, a child abuse pediatrician. 
Coffman testified that she interviewed Ila for a medical history, at
which time Ila told Coffman about sexual abuse she had suffered at the hands of
Cozzens.[3]
 Coffmans physical examination of Ila
revealed a number of pustules in the vaginal and anal area.  Based on the interview, the physical examination
Coffman conducted of the child, her consultation with the emergency room
physician at Cook Childrens Medical Center who initially examined and treated
Ila on August 26, and a review of Ilas medical records from Cook Childrens
Medical Center, Coffman diagnosed Ila as suffering from sexual abuse, genital
herpes, and vaginal discharge.  

II.        ANALYSIS

            A.        Coffmans Expert Opinion Was Reliable

            On appeal, Cozzens generally
contends that Coffmans testimony regarding Ilas diagnosis is unreliable because
it is based on laboratory results for herpes testing found in the medical
records of Cook Childrens Medical Center and not from Coffmans own work.  Cozzens complains that because Coffman
neither performed the herpes test nor was present to ensure that proper
protocol was followed in the collection and transmission of culture material,
Coffmans opinion regarding Ilas diagnosis is unreliable.

            Even
when an expert relies on information of which the expert has no personal
knowledge, the admissibility of his opinion is not affected unless the court
determines that he does not have a sufficient basis for his opinion.  Aguilar
v. State, 887 S.W.2d 27, 29 (Tex. Crim. App. 1994).  Rule 705(c) of the Texas Rules of Evidence
governs the reliability of expert testimony and states that [i]f the court
determines that the underlying facts or data do not provide a sufficient basis
for the experts opinion under Rule 702 or 703, the opinion is inadmissible.  Tex. R.
Evid. 705(c).  

            Cozzens
was afforded the opportunity, pursuant to Rule 705(b) of the Texas Rules of
Civil Procedure, to voir dire Coffman regarding the underlying facts or data
upon which her opinion was based.  Tex. R. Civ. P. 705(b).  During this voir-dire examination, Coffman
testified that she was familiar with sexually transmitted diseases (including
genital herpes) and the testing and diagnosis of those diseases.  She related that genital herpes is most easily
diagnosed with a culture test.  Although
she was not present when specimens in this case were collected and sent to the
laboratory, Coffman described how a specimen is collected, stored, identified,
and tested for genital herpes. Coffman generally described laboratory testing
known as a polymerase chain reaction, which tests certain parts of a virus DNA
for identification purposes.  If the
results are positive for the presence of the genital herpes virus, the virus is
then sub-typed as herpes I or II.  The
ordering physician is then provided the test results, which are entered into
the computer by someone with immediate knowledge of that information.  

            Coffman
did not take the specimen in this case and she did not perform the laboratory
testing to determine positive test results for genital herpes.  Instead, Coffman relied on the physician who
collected the specimen and on the laboratory personnel who conducted the
testing to follow protocol to ensure the accuracy of the test results.  These laboratory test results are included in
the records of Ila from Cook Childrens Medical Center.  

            Coffmans
diagnosis of genital herpes was not, however, based solely on the laboratory
test results.  In addition to the test
results she was provided, Coffman based her diagnosis on (1) her consultation
with Dr. Doreen Teoh (the emergency room physician who examined and treated Ila
at Cook Childrens Medical Center); (2) her medical history interview and the
physical examination of Ila she had conducted; (3) Coffmans education,
training, and experience; and (4) a review of Ilas medical records from Cook Childrens
Medical Center.  Coffman further
testified that it is customary in her profession to rely on consultation with
other physicians who have treated the patient as well as on the patients
medical records in forming a diagnosis.  Coffmans diagnosis that Ila suffered from
genital herpes has not changed.  

            Although
Cozzens did not dispute Coffmans qualifications to provide expert testimony,
he maintained that her testimony was not reliable expert witness evidence.  The trial court overruled this
objection.  We review the trial courts
decision to admit expert testimony under an abuse of discretion standard.  Alvarado
v. State, 912 S.W.2d 199, 216 (Tex. Crim. App. 1995); Malone v. State, 163 S.W.3d 785, 793 (Tex. App.Texarkana 2005,
pet. refd).  An abuse of discretion
occurs when the trial court acts without reference to any guiding rules and
principles, or in other words, acts in an arbitrary and unreasonable
manner.  Malone, 163 S.W.3d at 793.

            Rule
703 of the Texas Rules of Evidence provides that:

The facts or data in the particular case upon
which the expert bases an opinion or inference may be those perceived by,
reviewed by, or made known to the expert at or before the hearing.  If of a type reasonably relied upon by
experts in the particular field in forming opinions or inferences upon the
subject, the facts or data need not be admissible in evidence.

 

Tex.
R. Evid. 703.

            Coffman
testified that it is customary in her profession to rely on hospital records,
including laboratory test results, to form a diagnosis.  This testimony was not challenged.  Coffman was, therefore, entitled under Rule
703 to rely on the results of laboratory testing for genital herpes in
diagnosing Ilas condition.  See Aguilar, 887 S.W.2d at 29 n.9.  Moreover, the laboratory test result report
contained in the records of Cook Childrens Medical Center was not the sole
component of Coffmans diagnosis.  Coffman
also relied upon other factors, such as Ilas relation to her of a history of
sexual abuse and Coffmans physical examination of Ila, who exhibited an
outbreak of pustules in the vaginal and anal areas (which was consistent with
symptoms of that disease).  Coffman also
relied on her own education, experience, and training in reaching this
diagnosis and the opinion rendered by her. 
These factors render her opinion reliable.  The trial court did not abuse its discretion
in permitting Coffman to testify that Ila suffered from herpes and to testify
regarding the basis of that diagnosis (which necessarily included laboratory
test results of the type customarily relied on by physicians such as Coffman).[4]  See
Tex. R. Evid. 705(a).[5]
 We conclude that the underlying facts
and data upon which Coffman based her opinion provide a sufficient basis for
that opinion under Rule 705(c) of the Texas Rules of Evidence.  Tex.
R. Evid. 705(c).  The State
carried its burden to establish some foundation for the reliability of
[Coffmans] opinion.  Vela v. State, 209 S.W.3d 128, 134 (Tex. Crim.
App. 2006).  This point of error is
overruled.

            B.        The
Trial Court Did Not Err in Admitting Medical Records 

            Cozzens
further disputes the admissibility of Ilas medical records from Cook Childrens
Medical Center, and in particular, the laboratory test results contained in
those records.  Cozzens bases that
argument on the premise that there was no evidence provided that proper
protocol was followed in the collection or testing of the specimen for purposes
of identification of the herpes virus. 
Cozzens claims that merely because Coffman was entitled to rely on Ilas
medical records from Cook Childrens Medical Center in formulating her opinion,
such reliance does not render the records themselves admissible at trial.[6]
 Rule 705(d) of the Texas Rules of
Evidence sets forth a balancing test to determine whether otherwise
inadmissible facts or data upon which an expert opinion is based should be
excluded.  Tex. R. Evid. 705.  In
order to prompt the necessity to employ a Rule 705 balancing test, however, the
records must first have been determined to be inadmissible.  Cozzens fails to provide any legal authority
for his statement that the records are inadmissible due to a lack of a proper
foundation or predicate for admission of the test results contained
therein.  Under Rule 38.1 of the Texas
Rules of Appellate Procedure, an appellants brief must cite authority in
support of the issues raised.  Tex. R. App. P. 38.1(h).  A contention that is conclusory and cites no
authority presents nothing for review.  King v. State, 17 S.W.3d 7, 23 (Tex.
App.Houston [14th Dist.] 2000, pet. refd). 
We conclude that this issue is insufficiently briefed and thus presents
nothing for our review.   

            Cozzens
further claims the medical records in total should not have been admitted
because they were not provided to defense counsel until after jury selection;
thus, there was no opportunity to voir dire the venire with respect to
information contained in the records.  As
before, this contention is once again posited without citation to legal
authority.  We are thus presented only
with a conclusory statement.  As such,
this issue presents nothing for review.  Tex. R. Civ. P. 38.1(h); King, 17 S.W.3d at 23.  

            Finally,
Cozzens claims the medical records were inadmissible because they were not
submitted by the custodian of records. 
Contrary to this assertion, Coffman provided testimony proving up Ilas
medical records as business records in accord with Rule 803(6) of the Texas
Rules of Evidence.  Tex. R. Evid. 803(6).[7]  Thus, to the extent that the issue of the
medical records admissibility has been preserved, we find no error in their
admission.  This point of error is
overruled.

            C.        Factual
Insufficiency of the Evidence

            In his final point
of error, Cozzens claims the evidence is factually insufficient to support a
finding of guilt.  Under the authority of
a recent opinion where a plurality of the Texas Court of Criminal Appeals
abolished the separate factual sufficiency review, we do not address Cozzens
challenge to the factual sufficiency of the evidence.[8]  See
Brooks, 2010 WL 3894613, at **1, 14. 

III.       CONCLUSION

            We
affirm the judgment of the trial court.

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          November 23, 2010

Date Decided:             November 24, 2010

 

Do Not Publish

 

 











[1]Cozzens
was indicted on four additional charges of aggravated sexual assault of a child
(one of which was dismissed) and one additional charge of indecency with a
child by sexual contact as a result of occurrences that took place in July
2008; these matters were consolidated for trial.  Convictions resulting from these indictments
are the subject of a separate appeal before this Court, styled Gary Jordan Cozzens v. The State of Texas,
cause number 06-09-00158-CR, the opinion in which is issued of even date herewith.


 





[2]Pseudonyms,
the names of the two girls having been changed in this opinion.





[3]Ilas
statement or history included statements from her which included the
following:  Cozzens licked and touched
Ilas breasts.  He touched her privates
with his hands and his penis.  Cozzens
put his penis in her vagina.  Ila also
indicated that Cozzens put his finger and his penis in her anus, and it hurt.  Juice came out of his penis and onto Ilas
face.  Cozzens put his mouth on Ilas
privates and made her put her mouth on his penis.  Cozzens showed Ila pictures of naked people
in a magazine and told Ila not to tell, because he would go to jail.  Ila indicated that Cozzens had sores on his
penis.  





[4]At
trial, defense counsel objected to Coffmans testimony regarding statements Ila
made to Coffman regarding sexual abuse by Cozzens on the basis of hearsay and
that such testimony violated the Confrontation Clause of the United States and
Texas Constitutions.  The trial court
overruled the objection, apparently on the basis that the history given to
Coffman was for the purpose of medical diagnosis or treatment.  See
Tex. R. Evid. 803(4).  On appeal, Cozzens neither specifically
raised this issue, nor is this issue briefed for our consideration.  

 





[5]Rule
705(a) of the Texas Rules of Evidence permits an expert to disclose, on direct
examination, the underlying facts or data upon which her opinion is based.  Tex.
R. Evid. 705(a).

 





[6]Not
only did Coffman rely on the laboratory test results and other medical records
from Cook Childrens Medical Center in giving her opinionthe actual records,
including laboratory test results, were admitted into evidence at trial over
defense counsels objection.   





[7]Coffman
testified that upon questioning from the States attorney, she is the custodian
of records for Cook Childrens Medical Center; that States Exhibit 1 was kept
in the regular course of business by the hospital; that an employee or representative
made the records or transmitted the information regarding the acts, events,
conditions, opinions, or diagnosis contained therein; the information in the
records was recorded at or near the time or reasonably soon after the events
recorded in the records; the employee or representative who made the entries
had actual knowledge of the events recorded; and the records are exact
duplicates of the originals. 

 





[8]In
Brooks v. State, No. PD-0210-09, 2010
WL 3894613, at **1, 14 (Tex. Crim. App. Oct. 6, 2010) (4-1-4 decision), a
plurality of the Texas Court of Criminal Appeals abolished the factual
sufficiency review established by Clewis
v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996), and its progeny.  The plurality and a concurring Judge Womack
agreed that the Jackson v. Virginia
legal sufficiency standard is the only standard that a reviewing court should
apply in determining whether the evidence is sufficient to support each element
of a criminal offense that the State is required to prove beyond a reasonable
doubt.  Brooks, 2010 WL 3894613, at *1, 14. 
Accordingly, since the Texas Court of Criminal Appeals has abolished
factual sufficiency review on the part of the appellate review process, we need
not address the challenge to the factual sufficiency of the evidence.