In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00074-CR


______________________________




SHARON RENEA SANDERS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 241st Judicial District Court


Smith County, Texas


Trial Court No. 241-1730-08




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 A jury found Sharon Renea Sanders guilty of delivery of less than one gram of cocaine. (1) 
After finding the two enhancement paragraphs in the indictment true, the jury assessed twenty years'
imprisonment and a $10,000.00 fine. Sanders's sole point of error on appeal alleges she received
ineffective assistance of counsel when her trial attorney failed to object to the State's closing
argument urging the jury to calculate parole eligibility in determining Sanders's sentence. Because
the State's comments could be considered proper jury argument, alleviating the need for counsel to
object, we affirm Sanders's conviction. 

 The questioned statements made by the State included the following:

 And the range is anywhere from two years to 20 years. 


 Now, there's a lot of language in this charge about you cannot consider
essentially the parole laws in fixing the punishment in the case. Okay. But you're
entitled to know about them. Now, when you look at the parole laws in this case this
is what we essentially would call a quarter time offense. So if you were to return a
verdict in this case of 20 years['] confinement -- and that's what we're asking you to
do -- the defendant, depending on her good conduct time, would be eligible for parole
after she does five years. So, again, eligible for parole after a quarter of the time of
whatever y'all assess her. And a quarter of the time of a 20 year sentence would
make her eligible in about five years. 


 Now, the reason y'all can't go back there and say well 16 and 14 that's -- we
don't control it. You know, those are decisions made by individuals that are
independent of us.


 . . . . 


 Well, there's no way we can control it. That's why technically you're entitled
to know about it, but you can't use it as a guide. 


I. Standard of Review 

 Any allegation of ineffectiveness must be firmly founded in the record received by this Court. 
Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); Thompson v. State, 9 S.W.3d
808, 813 (Tex. Crim. App. 1999). Sanders bears the burden of proving that counsel was ineffective
by a preponderance of the evidence. Cannon v. State, 252 S.W.3d 342, 348-49 (Tex. Crim. App.
2008); Goodspeed, 187 S.W.3d at 392; Thompson, 9 S.W.3d at 813. We apply the two-pronged
Strickland test handed down by the United States Supreme Court to determine whether Sanders
received ineffective assistance of counsel. Strickland v. Washington, 466 U.S. 668 (1984). Stated
succinctly, the first prong of the Strickland test is a determination that counsel's performance was
deficient and the second prong is a determination that there is a reasonable probability that, but for
the deficient performance, the outcome of the proceeding would have been different. Ex parte
Imoudu, No. AP-75,964, 2009 Tex. Crim. App. LEXIS 730 (Tex. Crim. App. June 3, 2009). Failure
to satisfy either prong of the Strickland test is fatal. Ex parte Martinez, 195 S.W.3d 713, 730 (Tex.
Crim. App. 2006). Thus, we need not examine both Strickland prongs if one cannot be met. 
Strickland, 466 U.S. at 697. 

 Sanders must show counsel's performance fell below an objective standard of reasonableness
when considering prevailing professional norms. Id. at 687-88. "This requires a showing that
counsel made errors so serious that counsel was not functioning as the counsel guaranteed the
defendant by the Sixth Amendment." Ex parte Nailor, 149 S.W.3d 125, 130 (Tex. Crim. App. 2004)
(quoting Strickland, 466 U.S. at 687). Our review of counsel's performance is highly deferential. 
Ex parte White, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004). There is a strong presumption that
counsel's conduct fell within the wide range of reasonable professional assistance and that the
challenged action could be considered sound trial strategy. Strickland, 466 U.S. at 689; White, 160
S.W.3d at 51; Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Therefore, we will not
second guess the strategy of counsel at trial through hindsight. Blott v. State, 588 S.W.2d 588, 592
(Tex. Crim. App. 1979); Hall v. State, 161 S.W.3d 142, 152 (Tex. App.--Texarkana 2005, pet.
ref'd). Where the record is silent as to why counsel failed to make an objection or take certain
actions, we will assume it was due to any strategic motivation that can be imagined, and the
appellant will have failed to rebut the presumption that trial counsel's actions were in some way
reasonable. Mata v. State, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); Garcia v. State, 57 S.W.3d
436, 441 (Tex. Crim. App. 2001); Fox v. State, 175 S.W.3d 475, 485-86 (Tex. App.--Texarkana
2005, pet. ref'd). In other words, we will not conclude the challenged conduct deficient unless it was
so outrageous that no competent attorney would have engaged in it. Thompson, 9 S.W.3d 808; Fox,
175 S.W.3d at 485-86. 

 Next, it is not enough for Sanders to show that the errors had some conceivable effect on the
outcome of the proceeding. Strickland, 466 U.S. at 693. To meet the second prong of the Strickland
test, she must show that the deficient performance damaged her defense such that there was a
reasonable probability the result of the trial would have been different. Id.; Tong, 25 S.W.3d at 712. 
We evaluate this factor while taking into consideration the totality of representation and the
particular circumstances of this case. Thompson, 9 S.W.3d at 813; Ex parte Felton, 815 S.W.2d 733,
735 (Tex. Crim. App. 1991). 

II. Statements Made by the State Were Proper

 In accordance with Article 37.07 of the Texas Code of Criminal Procedure, the trial court's
punishment charge stated:

 It is possible that the length of time for which the defendant will be imprisoned might
be reduced by the award of parole. 


 Under the law applicable in this case, if the defendant is sentenced to a term
of imprisonment, she will not become eligible for parole until the actual time served,
without consideration of any good conduct time she may have, equals one-quarter of
the sentence imposed. Eligibility for parole does not guarantee that parole will be
granted. 

 

 It cannot be accurately predicted how the parole law and good conduct time
might be applied to this defendant if [she] is sentenced to a term of imprisonment,
because the application of these laws will depend on decisions made by prison and
parole authorities. 

 

 You may consider the existence of the parole law and good conduct time.
 . . . .You are not to consider the manner in which the parole law may be applied to
this particular defendant. 


See Byrd v. State, 192 S.W.3d 69, 71 (Tex. App.--Houston [14th Dist.] 2006, pet. ref'd); see also
Tex. Code Crim. Proc. Ann. art. 37.07 (Vernon Supp. 2008). 

 We recently addressed the meat of Sanders's complaint in an opinion entitled Ruiz v. State,
No. 06-08-00136-CR, 2009 WL 36670 (Tex. App.--Texarkana Jan. 8, 2009, no pet.) (mem. op., not
designated for publication); see also Johnson v. State, No. 06-04-00038-CR, 2004 WL 2826815,
at *2-3 (Tex. App.--Texarkana Dec. 10, 2004, no pet.) (not designated for publication) (holding
counsel's failure to object to State's argument regarding parole law was not ineffective assistance of
counsel). In Ruiz, the State made the jury argument that if a person was sentenced to twenty years'
imprisonment, a quarter of that time was five years, and they would be eligible for parole. Id. at *3. 
As clarified in Ruiz, the State may explain the existence of parole law. Taylor v. State, 233 S.W.3d
356, 358 (Tex. Crim. App. 2007); see also Taylor v. State, 911 S.W.2d 906, 911-12 (Tex.
App.--Fort Worth 1995, pet. ref'd) (State's jury argument that "if a person is sentenced to 20
years . . . then they become eligible to be considered for release on parole after one quarter, which
is five" merely discussed the trial court's charge and was proper.). 

 This issue has also been decided by the Texas Court of Criminal Appeals. Taylor, 233
S.W.3d at 358. In Taylor, the trial court's jury charge tracked the parole language employed by the
trial court in this case. Id. During closing argument, the State argued, "A 40-year sentence means
the defendant becomes eligible for parole after serving 20 years.  . . . A 60-year sentence means he
becomes eligible after 30 years. A sentence of life or 75 still means he becomes eligible after 30
years." Id. The Texas Court of Criminal Appeals held this argument was proper because the State
"did not convey any information beyond what was properly contained in the charge when he
explained how the parole eligibility rules set out in the charge worked with forty, sixty and seventy-five year sentences." Id. 

 Our sister courts have also decided this issue against Sanders's interests. In Sanchez v. State,
No. 07-06-0435-CR, 2008 WL 2405889, at *1 (Tex. App.--Amarillo June 13, 2008, no pet.)
(mem. op., not designated for publication), the defendant complained the State's argument that the
jury would "see that the only protection of the community that you can be assured of would be half
of whatever you send him," and the State's calculation if "you send him for 40 years, he would only
be there for 20," was an "attempt to inappropriately apply the parole law" to the defendant. Id. at *2. 
The Amarillo court of appeals held defendant's counsel was not ineffective in failing to object
because the State committed no error since the language regarding parole during jury argument
merely tracked the trial court's jury charge. Id. at *2-3. 

 Here, as in Ruiz, Taylor, and Sanchez, the State merely tracked the language in the jury
charge and explained the application of the parole formula. As such, no error was committed. 
Because the State did not commit error, counsel was not obligated to object to statements regarding
parole. 

III. Conclusion

 We affirm the trial court's judgment. 



 Bailey C. Moseley

 Justice


Date Submitted: July 16, 2009

Date Decided: July 24, 2009


Do Not Publish

1. Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court
by the Texas Supreme Court pursuant to its docket equalization efforts. See Tex. Gov't Code Ann.
§ 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court
of Appeals and that of this Court on any relevant issue. See Tex. R. App. P. 41.3.


STYLE="font-family: Times New Roman"> Evidence of "other crimes, wrongs, or acts," although relevant, is not admissible to prove the
character of a person in order to show that he acted in conformity therewith, but may be admissible
if it has relevance beyond character and conformity, such as to show motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident, subject to exclusion on the
trial court's finding that its probative value is substantially outweighed by the danger of unfair
prejudice. Tex. R. Evid. 303, 404(b); Montgomery v. State, 810 S.W.2d 372, 386-87 (Tex. Crim.
App. 1991) (op. on reh'g). If extraneous offense evidence is not relevant apart from supporting an
inference of character conformity, it is inadmissible under Rule 404(b). Id. After the opponent
objects to the evidence under Rule 404, the proponent has the burden to satisfy the court the evidence
is relevant beyond character conformity. Id. Evidence is relevant where it logically serves to make
more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental
fact, or defensive evidence that undermines an elemental fact. Id. It is not enough for proponents
to argue that the evidence establishes a common scheme or plan; proponents must demonstrate that
such common scheme logically makes an elemental fact more or less probable. Rankin v. State, 974
S.W.2d 707, 720 (Tex. Crim. App. 1996) (op. on reh'g).

 If the trial court determines the evidence is relevant beyond character conformity, further
objection based on Rule 403 is required to impose the duty on the court to balance the probativeness
and admit the evidence unless its probative value is substantially outweighed by the danger of unfair
prejudice. Montgomery, 810 S.W.2d at 387. Appropriate factors include whether the ultimate issue
was contested, whether the state had other convincing evidence to establish the ultimate issue to
which the extraneous misconduct was relevant, whether the probative value of the misconduct
evidence was alone or in combination with other evidence particularly compelling, and whether the
misconduct was of such a nature that a jury instruction to disregard it for any but its proffered
purpose would not likely have been efficacious. Rankin, 974 S.W.2d at 720. 

 The trial court's Rules 404(b) and 403 determinations are reviewed for abuse of discretion. 
Montgomery, 810 S.W.2d at 391. Only if the court finds that the trial court's determination of
relevance under Rule 404(b) was beyond the zone of reasonable disagreement, or was based on the
operation of a common prejudice and not borne out in reason, will the court find that the trial court
abused its discretion and proceed to determine the harmfulness of such error under Tex. R. App. P.
81(b)(2). Montgomery, 810 S.W.2d at 391. A determination is beyond the zone of reasonable
disagreement if by no reasonable perception of common experience could it be concluded that the
proffered evidence had a tendency to make the existence of a fact of consequence more or less
probable than it would be otherwise. Id.

 In determining whether the trial court abused its discretion in making its Rule 403
determination, the appellate court must not only determine the trial judge did in fact conduct the
required balancing test and did not simply rule arbitrarily or capriciously, but must also measure the
trial court's ruling against the relevant criteria by which a Rule 403 decision is to be made. Id. at
392. Where this review leads to the conclusion that the danger of unfair prejudice substantially
outweighs the probative value of the evidence, the court should find the trial court erred in failing
to exclude the evidence. Id. 

 The record does not reveal the trial court's reasoning in finding the extraneous offense
evidence relevant apart from character conformity or in finding that the probative value was not
substantially outweighed by the prejudice. Although such articulation on the record would be helpful
in reviewing such decisions, it is not required. Id. at 397. The trial court did state the evidence was
admissible for the limited purposes of establishing motive, intent, and system, and to rebut Grider's
defensive theory, so we limit our consideration to those purposes. 

 The extraneous offense evidence did not demonstrate Grider had a motive to strike Hardin
and therefore does not make it more or less likely Grider caused the injury, but it does provide a
basis for the jury to draw the inference that Grider was motivated by his prior conviction, despite his
precaution in avoiding local hospitals, to prohibit Hardin from seeking medical treatment and to
fabricate a story regarding the cause of the injuries. Demonstrating that if Grider had caused the
injuries he would have been motivated to deny Hardin medical treatment would lend credibility to
Hardin's account of the hours following the incident and would undermine Grider's explanation for
her delay in seeking treatment.

 The extraneous offense evidence could have been relevant to Grider's intent to cause bodily
injury by implying that because similar behavior had produced bodily injury in the previous case,
he would have been at least reckless in exhibiting the same behavior toward his girlfriend in this
case. 

 The defensive theory to which the State referred at the hearing on admissibility was Grider's
defense that Hardin had injured herself by falling. This defense put the element of causation at issue. 
To rebut this defense, the extraneous offense evidence must be relevant to make the element of
causation more or less probable. Because domestic violence often occurs in secrecy, pitting one
person's word against another's, the State's case may depend on the credibility of the complainant. 
When that credibility is called into question by the defendant, evidence demonstrating the
defendant's attitude, relevant to culpable intent, and willingness to act on it, relevant to prohibited
conduct, would lend credibility to the complainant's account that society might otherwise be reluctant
to find, especially in the face of defensive theories of revenge and greed, as Grider also presented
in this case. See id. at 394. Also, lending credibility to Hardin's account of the incident through the
inferences discussed above regarding motive would make causation more or less probable. 

 There are several similarities between the two offenses that may comprise a common plan,
scheme, or system. Grider had a similar relationship with both females. The location of the beating
in both cases was his home. In both cases, he used his hands and fists. Grider demonstrated the
same concern for obtaining treatment and the same awareness of guilt to his girlfriends after both
beatings. Grider fabricated stories for the authorities to explain away the injuries in both cases. The
prior offense, because of the similarities, is relevant beyond the prohibited purpose of suggesting that
Grider is generally a bad character and therefore is more likely to have committed another crime. 
It is relevant beyond implying because Grider previously committed assault, he is more likely to have
become violent and committed another assault. The similarities may suggest that when Grider finds
himself in a similar situation, he will act in a similar fashion, but more importantly, the similarities
would also lend credibility to Hardin's testimony and thus make causation more probable. 

 It is not outside the zone of reasonable disagreement to find the evidence was admissible for
the legitimate purposes stated by the court. The court provided an instruction to the jury limiting
their consideration of the evidence to legitimate grounds. Therefore, the trial court did not abuse its
discretion in overruling Grider's Rule 404(b) objection regarding the extraneous offense evidence. 
 The trial court, on overruling Grider's Rule 404(b) objection, was obligated by the Rule 403
objection to balance the probative and prejudicial value of the evidence to determine if it was
admissible. Although the court is not required to articulate the bases for its ruling, the court must
go through the balancing process and consider the appropriate factors. The court in this case did not
articulate the basis for its ruling, but recited that the probative value of the evidence was not
substantially outweighed by the danger of unfair prejudice. Grider did not object to the trial court's
failure to articulate the basis for its ruling. Because there was evidence of some of the relevant
factors available to the court, although the court did not inquire as to any of them during the hearing,
we cannot say that the court failed to conduct the balancing test. However, we must measure the trial
court's ruling against the relevant criteria by which a Rule 403 decision is to be made. See id. at 392. 


 In this case, the ultimate issue of causation was contested. Although the State had other
evidence to prove causation, it was not conclusive and was easily called into question. Hardin's
testimony was the only eyewitness account of the incident, so her credibility was extremely
important to the State's case. The testimony the injuries were consistent with Hardin's account of
being hit with hands or fists was less compelling beside testimony that such injuries could also be
consistent with Grider's account of Hardin being injured in a fall and hitting her jaw. In combination
with the other evidence presented, the probative value of the extraneous offense evidence was
particularly compelling because it supported the credibility of Hardin's accounts not only of the
beating, but of the events which followed. The prior misconduct, assault, was not of such a nature
that a jury would not be able to disregard it for any but its proffered purpose, even when instructed
by the court to do so. Because a review of the appropriate factors does not demonstrate the probative
value of the evidence would have been substantially outweighed by the potential for unfair prejudice,
we cannot say the court abused its discretion in admitting the extraneous offense evidence. Because
we find the court did not err, we do not need to address the issue of harm. Grider's second point of
error is overruled. 

 The judgment of the trial court is affirmed. 




 Ben Z. Grant

 Justice


Date Submitted: October 26, 2001

Date Decided: January 25, 2002


Publish