In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00164-CR

                                                ______________________________

 

 

                                JACKIE LAWRENCE SCOTT,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 196th
Judicial District Court

                                                              Hunt County, Texas

                                                            Trial
Court No. 25,735

 

                                                          
                                        

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            Having
been convicted of aggravated robbery with a deadly weapon and assessed a
penalty of eleven years’ imprisonment by a jury, Jackie Lawrence Scott has
prosecuted this appeal with a singular complaint:  Scott alleges that he received ineffective
assistance of counsel at trial because counsel failed to request a jury
instruction regarding the need of independent evidence to corroborate the
testimony of accomplice witnesses.  

            We
affirm the judgment of the trial court because the record does not demonstrate
ineffectiveness by Scott’s trial counsel. 


Fact Summary

            Sometime
between 4:00 a.m. and 5:00 a.m. December 19, 2008, Mike Bell, Jr., Bryan
Morrison, David Taylor, and Scott were the only patrons in the Pot of Gold Game
Room in Greenville, Texas.  Bell and Scott
asked William Robert Streng, the on-duty manager of the game room, to unlock
the door[1]
so they could leave to pick up their friend, Billy Massey, who had just
called.  After Streng complied, Bell and
Scott left and then returned, but Massey was not with them (something of which
Streng took no particular notice at the time). 
Shortly thereafter, Bell once more asked Streng to unlock the door, this
time under the pretense that Bell wanted to return to his truck so he could
retrieve money from it.  When Streng
unlocked and opened the door, a man wielding a pistol, wearing a ski mask, and
clad in a hoodie sweatshirt entered the game room and ordered Streng to lie on the
floor.  Streng complied, but
surreptitiously removed $230.00 from his pocket and tossed it between two of
the gaming machines.  Streng testified
that the armed man tossed some duct tape to Scott, who used the tape to bind
Streng “from the head all the way down” to his feet and blindfolded him.  Streng was then carried to the restroom, where
he extricated himself from the duct tape after being left alone.  Hearing Streng banging on the drywall ceiling
in an effort to escape, Massey and Scott re-entered the restroom and taped him
up once more.  After listening to quite a
bit of noise (including a single shot which Streng feared was directed toward
him), Streng noticed that absolute quiet had finally returned to the game
room.  He then managed once again to
remove the duct tape, returned to the main part of the building, observed that
all of the video machines had been broken into and noticed that all of the
telephones had been removed, and ran to the highway to seek aid.  Streng said he flagged down a passerby, who
took him down to the street, where he used the telephone to alert the
authorities.

            The
padlocks on the game room’s slot machines had been cut off with bolt cutters
and the cash and circuit boards in them had been removed, along with the
telephones, the video surveillance cameras, and recording equipment on the
premises. 

            A
Wal-Mart employee testified that at about 4:30 a.m. December 19, 2008, a group
of three males (later identified from the Wal-Mart security video recording as
Scott, Bell, and Massey) had entered the Wal-Mart store in Greenville and had
purchased a set of bolt cutters, a ski mask, a hoodie, gloves, duct tape, a
screwdriver, and a crowbar.  The Wal-Mart
store, being only three to four miles distant from the crime scene, was a mere
five-minute drive from the game room.  

            Two
days after the robbery, Scott called Steven Thornton, and asked if he was
interested in buying game room circuit boards on consignment.  A few days after the robbery, Massey was
arrested at a friend’s house; at the time of his arrest, he was found to have
bolt cutters in his possession. 

            At
the time of Scott’s trial, Bell and Massey had already pled guilty to
aggravated robbery with a deadly weapon as a result of the incident; both were
called as witnesses by the State.  Bell
testified that Massey was the ring leader of the robbery, ordering the others
around, and that he thought at the time of the robbery Massey might have shot
Streng.  Bell identified Scott as being
with him as portrayed in the Wal-Mart security photographs from the night of
the robbery, but he denied that Scott was involved in the robbery.  However, Bell had previously given a
statement that Scott had freely and voluntarily participated in the robbery and
that statement was introduced. 

            Like
Bell, Massey identified Scott in the Wal-Mart security photographs; however
Massey testified that “all of us” (meaning Streng as well as Scott and Bell)
were involved in planning the robbery.  Massey
testified that Taylor ended up helping in the robbery and that Streng acted as
an accomplice as the game room would make an insurance claim for the cash
taken.  He claimed that Scott was
involved in taping up Streng and that once Streng was put in the restroom, Massey,
Scott and the others “bust[ed] open the machines.”  After the robbery, Massey, Scott, and Bell
left together in the same vehicle. 
Massey confirmed that they took cash and computer boards during the
robbery.

The Record Does Not Demonstrate
Ineffectiveness by Scott’s Trial Counsel

            In Scott’s sole point of error, he
argues that his trial counsel was ineffective because he failed to request an
accomplice-witness jury instruction that would have instructed the jury that
independent corroborating evidence linking Scott to the crime was necessary in
order to convict.  Tex. Code Crim. Proc. Ann. art 38.14
(Vernon 2005); Druery v. State, 225
S.W.3d 491, 498 (Tex. Crim. App. 2007). 
By their own testimony, Massey and Bell admit to being accomplices with
Scott; Massey also claims that Streng participated in the entire episode as an
accomplice in an effort to perpetrate insurance fraud.

            Ineffective
assistance of counsel claims are evaluated under the two-part test formulated
by the United States Supreme Court in Strickland
v. Washington, requiring a showing of both deficient performance and
prejudice.  466 U.S. 668, 689 (1984); Thompson v. State, 9 S.W.3d 808, 812
(Tex. Crim. App. 1999); Fox v. State,
175 S.W.3d 475, 485 (Tex. App.—Texarkana 2005, pet. ref’d).  First, Scott must show that his counsel’s
representation fell below an objective standard of reasonableness.[2]
 Fox,
175 S.W.3d at 485 (citing Tong v. State,
25 S.W.3d 707, 712 (Tex. Crim. App. 2000)). 
We indulge a strong presumption that counsel’s conduct falls within the
wide range of reasonable, professional assistance, and was motivated by sound
trial strategy.  See Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App.
1994).  The second Strickland prong requires a showing that the deficient performance
prejudiced the defense to the degree that there is a reasonable probability
that, but for the attorney’s deficiency, the result of the trial would have
been different.  Strickland, 466 U.S. at 694; Tong,
25 S.W.3d at 712.  Failure to satisfy
either part of the Strickland test is
fatal.  Strickland, 466 U.S. at 697; Ex
parte Martinez, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006).

            A
Strickland claim must be “firmly
founded in the record” and “the record must affirmatively demonstrate” the
meritorious nature of the claim.[3]  Goodspeed
v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); Thompson, 9 S.W.3d at 813.  Under this standard, a claimant must prove
that counsel’s representation so undermined the proper functioning of the
adversarial process that the trial cannot be relied on as having produced a
just result.  Strickland, 466 U.S. at 686.

            Here,
the record is effectively silent[4]
as to the reasoning employed by Scott’s trial counsel in his not having
requested accomplice-witness jury instructions regarding the testimony of Bell,
Massey, and Streng.  Where an appellate
record is silent as to why trial counsel failed to take certain actions, Scott has
failed to rebut the presumption that trial counsel’s decision was in some way
reasonable.  See Mata v. State, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007).  In this case, there is no record at any level
to indicate that there was no strategic reason that counsel declined to request
the special instruction.

            One
should note that there was some corroborating testimony implicating Scott in
that Thornton (who was not alleged to have been an accomplice) had testified
that Scott had attempted to peddle game room circuit boards––rather unusual
items and which were likely fruits of the robbery.  Further, the Wal-Mart security video recording
showing Scott in the act of participating with two of the admitted perpetrators
of the crime in the purchase of the identical kinds of things used in carrying
out the robbery (i.e., tools in the robbery) at about the same time the robbery
occurred would point to corroboration. 
Perhaps Scott’s counsel considered this as corroboration, which would
have rendered such an instruction of no practical value to the defense.

            The
ineffectiveness of counsel is a matter that must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged
ineffectiveness.  Smith v. State, 51 S.W.3d 806, 812 (Tex. App.—Texarkana 2001, no
pet.).  In the absence of such a record,
and lacking anything that would indicate such ineffective assistance as could
be shown without such a record, we overrule the point of error.

            We
affirm the trial court’s judgment.  

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          May 17, 2011

Date Decided:             June 1, 2011

 

Do Not Publish 

 











[1]The
front door of the establishment was always locked after midnight, and only
Streng had the keys. 





[2]The
presumptions and standards of proof of Strickland
apply to the punishment phase as well as to the trial state of criminal
proceedings.  Wiggins v. Smith, 539 U.S. 510 (2003); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986).





[3]Under
normal circumstances, the record on direct appeal will not be sufficient to
show that counsel’s representation was so deficient and so lacking in tactical
or strategic decision making as to overcome the presumption that counsel’s
conduct was reasonable and professional.  Mallett
v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); Fuller v. State, 224 S.W.3d 823, 828–29 (Tex. App.—Texarkana 2007,
no pet.).  In addressing this reality,
the Texas Court of Criminal Appeals has explained that appellate courts can
rarely decide the issue of ineffective assistance of counsel because the record
almost never speaks to the strategic reasons that trial counsel may have
considered.  The proper procedure for
raising this claim is, therefore, almost always by application for writ of
habeas corpus.  Freeman v. State, 125 S.W.3d 505, 511 (Tex. Crim. App. 2003); Aldrich v. State, 104 S.W.3d 890, 896
(Tex. Crim. App. 2003).

 





[4]The
record before us does not reflect that there was any new trial or post-trial
hearing or other evidence.